Maurice KNOLLMAN, Plaintiff, Appellant,

v.

W. J. KENNEDY, Defendant, Respondent.

No. 32786.

St. Louis Court of Appeals.

Missouri.

June 14, 1968.

Maurice M. Knollman, pro se.

Niedner, Niedner & Moerschel, St. Charles, for plaintiff-appellant.

Mueller & Riethmann, Ralph K. Soebbing, St. Louis, for defendant-respondent.

RUDDY, Judge.

In this action to recover damages for personal injuries and property loss a jury trial resulted in a verdict for defendant. Plaintiff appealed and in his first point contends that the trial court erred in giving defendant's Instruction No. 3 which submitted the defense of contributory negligence in the following language:

"Your verdict must be for the defendant, whether or not defendant was negligent, if you believe:

"First, plaintiff suddenly slowed his automobile on the roadway without first giving an adequate and timely warning of his intention to slow, and

"Second, plaintiff's conduct submitted in paragraph First was negligent, and

"Third, such negligence of plaintiff directly caused or directly contributed to cause the injuries and damage plaintiff may have sustained."

Plaintiff's alleged injuries resulted when defendant's car ran into the rear of plaintiff's car. It is the contention of plaintiff that there was no evidence to support the issues submitted under Instruction No. 3.

This contention requires a summation of the evidence. First, we describe the intersection. The collision occurred on Lafayette Avenue, an east-west avenue, at or near its intersection with Grand Avenue, a north-south avenue. Traffic is controlled by an electric signal. The sequence of the signal direction lights for west bound traffic on Lafayette alternates from red to green (for straight ahead traffic), together with a left turn arrow (for traffic desiring to turn south on Grand Avenue), followed by a right turn (only) arrow (for traffic desiring to turn north on Grand Avenue.)

We narrate plaintiff's version of the course of his car preceding the collision. Plaintiff was the owner of a four door 1960 Ford Sedan which he operated as a taxicab for the Laclede Cab Company. On July 29, 1963, in the late afternoon, plaintiff was seated in his cab which was parked in the curb lane on the north side of Lafayette, facing west, approximately 60 feet east of Grand. Nothing was parked between his car and Grand. Lafayette east of Grand is a six lane highway, three lanes for west bound traffic and three lanes for east bound traffic. West of Grand it is a four lane highway and permits west bound traffic only. Plaintiff moved his car from its parked position to within two feet east of the crosswalk that leads from the southeast corner of Grand and Lafayette to the northeast corner on the east side of Grand. He stopped there because the signal indicated red. He was in the right hand curb lane approximately 18 inches to 2 feet from the north curb of Lafayette. He said he remained there for at least 30 seconds. It was his intention to make a right turn. While stopped there and while the red light was on he turned on the right turn signal light on his car. Thereafter, plaintiff's car was struck in the rear by defendant's car. It appears that the left one-third of the rear of plaintiff's car was struck by the right one-third of the front of defendant's car. After the impact defendant's car was approximately 15 feet to the rear, that is to the east of plaintiff's car. Plaintiff

testified that defendant told him that he was distracted before the collision by a woman crossing the street. Plaintiff said "I never saw any woman to distract anybody." Plaintiff did not see defendant's automobile at any time before the collision and could say nothing about the operation of defendant's car, its movement or its speed before the two vehicles collided. Plaintiff did not see defendant's car in his rear vision mirror.

Plaintiff in his case in chief introduced into evidence and read to the jury certain statements taken from the deposition of defendant which plaintiff offered as admissions against interest of the defendant. The substance of the statements read from defendant's deposition shows that defendant first saw plaintiff's taxicab as defendant was proceeding west on Lafayette at which time the taxicab was pulling away from the curb heading west from about 60 feet east of Grand. Defendant said it pulled up and made a stop and that he pulled up behind the cab. Defendant said the cab was not stopped at the time of the collision, "not to my knowledge it wasn't stopped." He said the cab was moving and his car was moving at the time of the collision and at the time of the collision the cab was heading northwest. "Q. Was the cab turning? A. Yes, he had made a turn. Q. Made a right turn? A. Yes. Q. *And was his signal indicator on?* A. *I don't remember that.*" Defendant further testified in his deposition that as his car and plaintiff's car started forward the electric signal on the other side of the street was " * * * for going west and a left-hand signal was on, and *as we proceeded forward I glanced to the left,* there was a woman crossing the street *and the next thing I knew, there was an impact.*" "Q. *Well, did you see his car at the time of the impact?* A. *No, sir.* Q. In other words, you were looking to the left? A. *I glanced to the left and there was the impact.*" Defendant said he was directly behind plaintiff's car and the impact happened about 4 feet from the corner and

thought he had moved 14 feet after he last saw plaintiff's car before the impact. It was his intention to continue west on Lafayette. When defendant was waiting for the signal to change from red to green he was 10 inches or a foot behind plaintiff's car. He thought he might have told plaintiff that he glanced at this woman crossing over. He said he first saw the woman when she was about 6 feet off the curb, that is, she was about 6 feet out from the southeast curb corner heading north.

Defendant in his testimony at the trial related the following version of what happened immediately prior to and at the time of the impact. Defendant first saw plaintiff's vehicle as defendant was driving west on Lafayette and as plaintiff's vehicle pulled away from the curb some 50 or 60 feet east of Grand and headed west. He followed plaintiff's car to Grand where it made a stop and defendant stopped behind plaintiff's car. Defendant's car was in the second lane from the north curb which would enable defendant to go directly west on Lafayette and which placed one-third of the right front of defendant's car behind plaintiff's car. Plaintiff's car was astraddle the line dividing the first and second lanes. As plaintiff's vehicle and defendant's vehicle got to the intersection the color of the signal light was red. The light changed to green and left turn and thereafter the taxicab started to move and defendant started to move. Thereafter, defendant *"glanced to the left and there was immediately a collision."* In this connection defendant testified as follows: "Q. You glanced to the left. What was your reason for doing that? A. I noticed out of the corner of my eye there was a woman coming across the crosswalk. Q. A pedestrian? A. Yes." This pedestrian was crossing from the south to the north. Defendant was asked the following questions and gave the following answers: "Q. Well, prior to the time that the cab moved forward when the green light came on, had the cab given any signal or anything indicating an intention to do anything other than go straight

ahead? A. No, sir. Q. Did you ever see the driver of the cab stick his arm out or give any other kind of signal indicating an intention to slacked speed or stop after he started up? A. No, sir." Defendant's right front fender came into contact with the left rear portion of plaintiff's car. Defendant said, "it was a very mild impact." After the accident there was no distance between the two vehicles, the two cars were touching each other. When defendant was asked if he had any conversation with plaintiff after the accident as to how the accident happened, he answered, "As I got out of the car, Mr. Knollman got out of his; I asked him, because of the position of his car, *whether he had started up and backed up* and he told me that he had went—he had started to make a right-hand turn and realized that the signal, electric signal, was not in his favor, and that he started into his turn and slammed on his brakes." Defendant said the right turn arrow was not on at the time that his car and plaintiff's taxicab started forward; that "The left-hand and green was on to go ahead." It was the intention of defendant to go straight west on Lafayette across Grand. Defendant thought he was going around five miles an hour when the two vehicles came together and thought he had traveled between 10 to 14 feet between the time he started up and the impact.

In his cross examination defendant testified that when plaintiff pulled away from the curb plaintiff was about three or four feet from the north curb. Defendant when asked, "Did you observe any kind of a signal made by this cab at any time before the collision" answered, "I possibly saw him put his brakes on when I pulled up and stopped behind him, yes." Defendant affirmed what he said in his deposition that he did not remember "as we were proceeding west" whether plaintiff's signal indicator was on. In his cross examination defendant gave the following testimony, "Q. *Actually, you were not looking at him or—immediately before the impact, were you? A. I stated that to you, sir. Q. You*

*were looking to your left? A. I glanced to my left.* Q. And you glanced to your left because some lady stepped off the sidewalk on the south side of the street, is that correct? A. That's right, sir. Q. So when you saw her, if you were in that middle lane—well, about how far from the sidewalk did she get, or from the curb? A. As I remember, when I glanced over, she was six or eight feet away, *so I glanced back and the accident happened.*"

■■ The sole question posed by plaintiff's contention is were the issues submitted in Instruction No. 3 supported by evidence? Instruction No. 3 was patterned after MAI Nos. 28.01 and 17.11. In the Committee's Comment following MAI No. 28.01, p. 230, it is said: "Contributory negligence is an affirmative defense which must be pleaded and proved by the defendant. Mo.R.Civ.P. 55.10. Submitting such a defense when not supported by the record is, of course, reversible error." We think the submission whether plaintiff suddenly slowed his automobile on the roadway was amply supported by the testimony of defendant that plaintiff told him "he had started to make a right-hand turn and realized that the signal, electric signal, was not in his favor, and that he started into his turn and slammed on his brakes." This is sufficient and substantial evidence from which the jury could reasonably find that "plaintiff suddenly slowed his automobile on the roadway." Obviously, when plaintiff slammed on his brakes it had the effect of suddenly slowing the forward movement of plaintiff's automobile. However, that part of Instruction No. 3 which permitted the jury to find that plaintiff failed to give "an adequate and timely warning of his intention to slow" his automobile has no evidentiary support in the record.

The case of Brassfield v. Sears, Mo., 421 S.W.2d 321 involved a rear end collision. There was a judgment against plaintiff and in favor of the driver who rear-ended plaintiff's automobile. The court submitted on behalf of said driver-defendant a con-

tributory negligence instruction similar to the one submitted in this case. In that case the court said, (l. c. 323) "There is nothing more firmly entrenched in the law than the requirement that issues submitted in instructions to the jury be supported by evidence from which the jury could reasonably find such issue. * * *" After reviewing the testimony the court said, "* * * Under his own testimony he was not observing the car ahead until it was too late to stop or slow and avoid hitting him. There was thus no evidence to justify the submission of slowing without an adequate and timely signal, and the giving of Instruction No. 7 was therefore reversible error. * * *" The evidence in the *instant case reveals a similar situation. Plaintiff in his version of what happened said his car was not moving but was stopped at the time of the collision and had been stopped for approximately thirty seconds. Defendant contends that plaintiff was stopped, but when the signal changed from red to green and left turn that plaintiff started up at which time he also started up. We think a perusal of defendant's testimony and the admissions he made in his deposition shows conclusively that after plaintiff and defendant started up, defendant was looking to his left following the course of the woman crossing the street and never again saw the movement of plaintiff's car until the collision took place.*

Defendant, in his deposition and in his testimony at the trial, said that as his car and plaintiff's car proceeded forward he glanced to the left to observe a woman who was crossing the street and the next thing he knew there was an impact or collision. He did not see plaintiff's car at the time of the collision and his testimony shows conclusively that his car traveled 14 feet after he last looked at and saw plaintiff's car before the impact. A referral to defendant's testimony and admissions in his deposition, some of which we have related and have italicized, clearly support what we have said, that defendant was not looking toward plaintiff's car after the two cars started up and, therefore, defendant was in no position to see any signal plaintiff or plaintiff's car may have given. That defendant was not looking becomes abundantly clear when we observe his confusion after the collision which was shown by his inquiry of plaintiff, whether plaintiff had *started up or backed up. He did not know what happened because he was not looking.* Defendant was not observing plaintiff's car ahead and, therefore, as said in the Brassfield case, supra, there was thus no evidence to justify the submission of slowing without an adequate and timely signal, and the giving of Instruction No. 3 was therefore reversible error.

■ There is an additional reason why the giving of the aforesaid instruction, which permitted a finding that plaintiff did not give an adequate and timely warning of his intention to slow, was error. We have found that there was no evidence to justify the submission that plaintiff failed to give "adequate and timely warning of his intention to slow." As we have pointed out defendant would not have seen any warning of plaintiff's intention to slow had it been given or not given. As said in Brassfield v. Sears, supra, the assigned omission of that duty in Instruction No. 3, in the instant case, could not therefore have been a proximate cause of the collision. In the Brassfield case, in support of this holding, it quoted language from the case of Branstetter v. Gerdeman, 364 Mo. 1230, 274 S.W.2d 240, " 'The mere fact that injury follows negligence does not necessarily create liability. A causal connection must be established between the negligence charged or submitted and the loss or injury sustained, such that the injury would not have happened but for the negligence, and also that the negligence was not only a cause but was a proximate cause. * *' " So, in this case, defendant would not have seen a warning of plaintiff's intention to slow had it been given and, therefore, such negligence of plaintiff, if so, could not have caused or contributed to cause the collision.

Plaintiff has briefed other points complaining about the reception and exclusion of certain evidence and the propriety of the argument of defendant's counsel. Plaintiff admits that some of the matters complained of were not presented in his motion for new trial. Inasmuch as this case will have to be reversed and remanded for new trial we see no need to rule on these points as they are unlikely to occur upon another trial and, therefore, need not be discussed on this appeal. The judgment of the trial court is reversed and the case is remanded for a new trial.

ANDERSON, P. J., and CLOYD, Special Judge, concur.