Terry W. WILKERSON, Sr. and Rose Wilkerson, Plaintiffs–Appellants,

v.

Melvin F. WILLIAMS, Defendant–Respondent.

No. 25762.

Missouri Court of Appeals, Southern District, Division Two.

Aug. 31, 2004.

531

"Rose") sued Melvin Williams ("Williams") to recover damages for Terry's personal injuries and Rose's loss of consortium after Terry was injured in an automobile collision involving Williams. At the close of all the evidence, the trial court granted a partial directed verdict against the Wilkersons on their theory that Williams was negligent for failing to keep a careful lookout. The jury returned a verdict apportioning no fault to Williams and finding Terry 100% at fault. The trial court entered judgment pursuant to the verdict, and this appeal followed.

The Wilkersons ask us to reverse the judgment, arguing that the trial court's decision to grant the partial directed verdict prevented them from submitting careful lookout as one of the specifications of negligence included in their verdict-directing instruction. We conclude that, even if the trial court erred in this respect, the error was harmless because the Wilkersons failed to make a submissible case on causation. The judgment must be modified, however, to correct a clerical error concerning the name of the actual party-defendant in the case. *See* Rule 84.14.[1] The judgment, as modified, is affirmed.

## I. Standard of Review

When ruling upon the propriety of a trial court's action in sustaining a motion for directed verdict, we consider the evidence and all permissible inferences therefrom in a light most favorable to the plaintiff and disregard all contrary evidence and inferences to determine whether plaintiff made a submissible case. *Wehrkamp v. Watkins Motor Lines, Inc.*, 436 S.W.2d 698, 700 (Mo.1969); *Friend v. Holman*, 888 S.W.2d 369, 371 (Mo.App.1994). Our summary of the evidence presented at tri-

Steven Privette, Kelly Michael Bosserman, Willow Springs, for appellants.

Paul F. Sherman, Springfield, for respondent.

JEFFREY W. BATES, Judge.

Terry Wilkerson, Sr. and Rose Wilkerson (referred to collectively as "the Wilkersons" and individually as "Terry" and

1. All references to rules are to the Missouri Rules of Civil Procedure (2004).

al, which is set forth below, has been prepared in accordance with these principles.

## II. Statement of Facts and Procedural History

This lawsuit arose out of an automobile collision that occurred on February 10, 1999, in Mansfield, Missouri. At approximately 7:40 a.m., Williams was driving his pickup truck on Business 60. At this location, the road had two lanes and was 24–feet wide. The speed limit on the road was 40 miles per hour. Williams was traveling west at a speed of 20–25 miles per hour. The weather was cloudy, but the concrete pavement was dry. Williams had topped a hill some distance back and was on a slight downhill grade. He was being followed by two other motorists, who also were heading west on Business 60. The first pickup truck behind Williams was driven by Alan Morris ("Morris"). His wife and child were passengers in the truck. Morris' vehicle was approximately five to seven car lengths behind Williams' truck. The second pickup truck behind Williams was driven by Terry. He was hauling a 250–pound four-wheel all terrain vehicle in the bed of his truck. Terry was traveling 30 to 35 miles per hour, and his vehicle was four to five car lengths behind Morris' truck.

Williams slowed down and then stopped suddenly to avoid hitting an animal on the road. Morris applied his brakes hard and brought his truck to a complete stop about one to two feet behind Williams' vehicle. Morris looked in his rearview mirror and realized his vehicle was going to be hit by Terry's truck. Morris told his wife to hang onto something because he was too close to Williams' truck to move right or left.

When Terry saw Morris' brake lights activate, Terry applied his brakes and swerved to the right, but he was unable to avoid colliding with Morris' truck. The left front of Terry's truck struck the right rear of Morris' truck. His vehicle was propelled forward by the impact and struck Williams' truck.

After the collision, a Mansfield police officer investigated the incident. The vehicles driven by Williams and Morris left no skid marks on the road. The vehicle driven by Terry left 42 feet of skid marks on the left side and 37 feet of skid marks on the right side. All of these skid marks were in the right-hand lane in which Terry had been driving.

On June 20, 2000, the Wilkersons filed their lawsuit against Williams in the Circuit Court of Wright County, Missouri. The petition alleged that Williams negligently operated his vehicle by failing to keep a careful lookout and by suddenly and unexpectedly stopping his vehicle in the road without giving an adequate and timely warning. Williams' answer asserted Terry's comparative fault as an affirmative defense. Thereafter, a motion for a change of venue was sustained, and the case was transferred to Webster County, Missouri.

Williams died on May 25, 2001. On July 6, 2001, his attorneys filed a suggestion of death with the trial court. On August 24, 2001, the trial court entered an order appointing Donna Hannah, the Webster County Public Administrator, as a defendant *ad litem* (hereinafter, "DAL") for Williams and substituting her as the party-defendant in the lawsuit.

The case was tried on July 15–16, 2003. At the close of all the evidence, the DAL filed a motion for directed verdict pursuant to Rule 72.01. The motion alleged, *inter alia*, that: (1) the Wilkersons failed to offer evidence tending to prove negligence by Williams which proximately caused their alleged injuries and damages; (2) as

a matter of law, the evidence showed that plaintiffs' damages were caused by Terry's negligence; and (3) the Wilkersons failed to make a submissible case against Williams for failing to keep a careful lookout and for stopping without giving an adequate warning.[2]

The trial court sustained the motion in part by directing a verdict against the Wilkersons on their careful lookout theory of recovery. The basis for the trial court's ruling was that Williams was under no legal duty to keep a careful lookout for vehicles following behind him on the road before slowing or stopping. Because of that ruling, the Wilkersons' verdict-directing instruction hypothesized only one act of negligence by Williams: that he "suddenly stopped his automobile on the highway without first giving an adequate and timely waning [sic] of his intention to stop...." The DAL's verdict-directing instruction submitted Terry's comparative fault by hypothesizing that he failed to keep a careful lookout and that his truck came into collision with the rear of Morris' truck. The jury returned a verdict assessing 0% fault to Williams and 100% fault to Terry. The trial court entered a judgment against the Wilkersons pursuant to the verdict, and they appealed.

### III. Discussion and Decision

■ In the Wilkersons' single point relied on, they challenge the trial court's decision that Williams had no legal duty under Missouri law to keep a careful lookout for following traffic before slowing or stopping. Because the trial court granted a partial directed verdict on this ground, the Wilkersons argue they were improperly precluded from submitting Williams' failure to keep a careful lookout as one of the specifications of negligence in their verdict-directing instruction. We find it unnecessary to reach the issue of whether such a legal duty exists to decide this appeal.

■ In order for a plaintiff to make a submissible case, each and every element essential to establish a defendant's liability must be supported by substantial evidence. *Mathis v. Jones Store Co.*, 952 S.W.2d 360, 366 (Mo.App.1997). If one or more of the elements of a cause of action are not supported by substantial evidence, a directed verdict is proper. *Crane v. Drake*, 961 S.W.2d 897, 900 (Mo.App.1998). To prove the claim of negligence against Williams, the Wilkersons had to establish the existence of a duty, breach of that duty and damages proximately caused by that breach. *Mirth v. Regional Bldg. Inspection Co.*, 93 S.W.3d 787, 790 (Mo.App. 2002); *Parra v. Building Erection Services*, 982 S.W.2d 278, 282 (Mo.App.1998). The DAL argues the Wilkersons failed to make a submissible case on causation. We agree. *See Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240 (1955); *King v. Ellis*, 359 S.W.2d 685 (Mo.1962); *Butcher v. Main*, 371 S.W.2d 203 (Mo.1963).

In *Branstetter*, the plaintiff was riding in a Chrysler driven by Kunzler. Beghtol was driving an Austin and was directly behind the Chrysler in a line of traffic. *Branstetter*, 274 S.W.2d at 241. A Dodge slowed down in front of Kunzler. He applied his brakes and brought the Chrysler to a stop without hitting the Dodge. When Beghtol saw the brake lights on the Chrysler illuminate, he applied the brakes and brought his Austin to a complete stop about two inches behind the Chrysler. *Id.* at 243–44. Thus, both Kunzler and Begh-

---

**2.** Rule 72.01 requires that "[a] motion for directed verdict shall state the specific grounds therefor."

tol were able to stop without hitting the vehicles in front of them. After Beghtol had been stopped about two seconds, his car was hit from behind by a Nash driven by Gerdeman. The Austin was knocked forward and struck the Chrysler, resulting in the plaintiff's injuries. *Id.* at 244. We note that, in the case at bar, Williams occupies the same position as Kunzler, and Terry occupies the same position as Gerdeman.

All three drivers were sued by plaintiff. She settled with Gerdeman before trial. Plaintiff alleged that Kunzler and Beghtol were negligent for suddenly stopping their vehicles without warning operators to the rear of their intention to slow or stop. *Id.* at 242. The trial court sustained Beghtol's motion for directed verdict at the close of all the evidence. Kunzler's similar motion was overruled, and the jury returned a verdict in his favor. The trial court sustained plaintiff's motion for new trial. Kunzler appealed from the new trial order, contending that plaintiff failed to prove his negligence on the grounds submitted. *Id.* The Missouri Supreme Court held that plaintiff failed to make a submissible case of causation against Kunzler. *Id.* at 246. The court began its analysis by noting that:

> The mere fact that injury follows negligence does not necessarily create liability. A causal connection must be established between the negligence charged or submitted and the loss or injury sustained, such that the injury would not have happened but for the negligence, and also that the negligence was not only a cause but was a proximate cause.

*Id.* at 245. After reviewing the facts of how plaintiff came to be injured in the collision, the court held as follows:

> A motorist has the right to some extent to assume that other motorists will obey the law of the road and exercise proper

care in the absence of any indication to the contrary. 60 C.J.S., Motor Vehicles, §§ 249, 270, pages 610, 650; 40 C.J.S., Highways, §§ 236d, 240, notes 56, 57, pages 256, 263, 5 Am.Jur. 600, § 169; 25 Am.Jur. 532, § 239. A trailing motorist owes a duty to observe the traffic and signals of the motorist ahead. It is stated in 65 C.J.S., Negligence, § 111d, page 693: "A prior and remote cause cannot be made the basis of an action if such remote cause did nothing more than furnish the condition or give rise to the occasion by which the injury was made possible, if there intervened between such prior or remote cause and the injury a distinct, successive, unrelated, and efficient cause of the injury, even though the injury would not have occurred but for such condition or occasion. If no danger existed in the condition except because of the independent cause, such condition was not the proximate cause." See, also, 65 C.J.S., Negligence, § 111f; *DeMoss v. Kansas City Rys. Co.*, 296 Mo. 526, 246 S.W. 566, 567 [ (1922) ]; *Smith v. Mabrey*, 348 Mo. 644, 154 S.W.2d 770, 772 [ (1941) ]. The following cases involving rearend automobile collisions are to the effect that in circumstances similar to those here presented the action of the front driver was not a proximate cause of the collision. *Georgia Power Co. v. Blum*, 80 Ga.App. 618, 57 S.E.2d 18, 23 [ (1949) ], col. 2; *Roberson v. Rodriguez*, La.App., 186 So. 853, 855[3–6] [ (1939) ]; *MacNeill v. Makos*, 366 Pa. 465, 77 A.2d 378, 379[1, 2] [ (1951) ]; *Ellis v. McCubbins*, 312 Ky. 837, 229 S.W.2d 992, 994[1] [ (1950) ]; *Webb v. Smith*, 176 Va. 235, 10 S.E.2d 503, 131 A.L.R. 558, 562 [ (1940) ]; *Szczytko v. Public Service Coordinated Transport*, 21 N.J.Super. 258, 91 A.2d 116, 118 [ (1952) ]; *Riccio v. Ginsberg*, 49 R.I. 32, 139 A. 652, 62 A.L.R. 967, 969 [ (1927) ]; *Hebert v. Keller*, La.App., 17

So.2d 746, 747[3] [(1944)]; 5 Am.Jur. 657, § 281; Annotation, 29 A.L.R.2d 5; 2 Blashfield, Automobile Law, 107, §§ 931, 949, 963. We conclude that Gerdeman's negligence was the proximate cause of the collision and plaintiff's injuries, and that the submitted acts of Kunzler were too remote to be causative in a legal sense and to impose liability.

*Id.* at 246.

In *King,* Ellis was driving a pickup truck. The next vehicle in line was a Ford driven by plaintiff King. The third vehicle in line was a Chrysler driven by Rayburn. Ellis slowed down and made a U-turn in front of King. King applied her brakes and slowed down without hitting Ellis' truck. When Rayburn saw King's brake lights activate, he applied his own brakes. The brake line failed, and Rayburn's Chrysler struck King's Ford, injuring her. *King,* 359 S.W.2d at 686–87. King settled her claim against Rayburn. She also sued Ellis, alleging that he was negligent for failing to signal his intention to turn. We note that, in the case at bar, Williams occupies the position of Ellis, and Terry occupies the position of Rayburn.

The trial court sustained Ellis' motion for directed verdict. Citing *Branstetter,* the Supreme Court affirmed the ruling, holding that King failed to make a submissible case on causation:

> This court held [in *Branstetter*] that the negligence of the driver of the third or last car was the proximate cause of the collision and plaintiff's injuries and that the alleged negligence of the driver of the first car was too remote to be causative in a legal sense. The order granting a new trial was reversed and the cause remanded with directions to reinstate the verdict and judgment for the

defendant.... In the case at bar the evidence shows that the plaintiff and Mr. Rayburn both saw the defendant's erratic behavior and applied their brakes. The plaintiff was able to slow her automobile so as to avoid contact with the defendant's truck so that she was not injured directly as a result of the defendant's negligence. Mr. Rayburn, in the car behind the plaintiff, was able to slow his automobile somewhat and would have been able to stop in time to avoid striking the plaintiff's automobile if the brake line on his car had not failed thereby permitting the brake pedal to go all the way to the floor. On the uncontroverted evidence, if the brakes on Mr. Rayburn's car had not failed the plaintiff would not have been injured. In the Branstetter case this court held that the admitted negligence of Gerdeman was the proximate cause of the plaintiff's injuries. Without the sudden and unexpected failure of the brakes on the Rayburn car in the present case, the collision would not have occurred. On the record before us the brake failure was an efficient, intervening cause and the proximate cause of the plaintiff's injuries. The trial court did not err in sustaining the defendant's motion and in directing a verdict for the defendant.

*King,* 359 S.W.2d at 688–89 (citations omitted).

This line of authority continued in *Butcher.*[3] There, four cars were in a line of traffic. The first car was driven by O'Connor. The second car was driven by Politte. The third car was driven by Butcher. The fourth car was driven by Main. O'Connor suddenly brought his car to a stop. Politte's car ran into the back of

---

3. The Supreme Court reached the same outcome in the companion case of *Butcher v. O'Connor,* 401 S.W.2d 490 (Mo.1966), which involved a loss of consortium claim brought by Butcher's husband against the same defendants.

O'Connor's car, but Butcher was able to stop her car without hitting Politte's vehicle. She was injured when Main's car struck the back of her vehicle. *Butcher,* 371 S.W.2d at 204–05. In the case at bar, Williams occupies the same position as O'Connor, and Terry occupies the same position as Main.

Butcher sued O'Connor, Politte and Main. At the conclusion of plaintiff's opening statement, the trial court directed a verdict for defendants O'Connor and Politte. Plaintiff obtained a verdict and judgment against Main. On appeal, plaintiff challenged the trial court's directed verdict ruling. Relying on *Branstetter* and *King,* the Supreme Court affirmed the trial court's grant of a directed verdict for O'Connor and Politte:

> We are convinced, however, that the trial court did not commit prejudicial error in directing the verdicts in the case at bar.... While it may be assumed that defendants O'Connor and Politte were negligent, it may be said as a matter of law that such negligence was not a proximate cause of plaintiff's injuries. Since plaintiff was able to bring her car to a gradual normal stop without colliding with the car ahead, it is obvious that the efficient, intervening cause and the proximate cause of plaintiff's injuries is the fact that defendant Main's car collided with the rear end of plaintiff's car.

*Id.* at 207.

Based on the analysis in *Branstetter, King* and *Butcher,* we conclude that Terry's negligence was the proximate cause of the collision as a matter of law. Therefore, William's alleged failure to keep a careful lookout and failure to warn of his intention to stop were too remote to be causative in a legal sense and support the imposition of liability upon him.

■ We will only reverse the erroneous entry of a directed verdict and remand the case for a new trial if the error is prejudicial. *Johnston v. Allis–Chalmers Corp.,* 736 S.W.2d 544, 548 (Mo.App.1987). Even if the trial court was wrong in deciding that drivers do not have a legal duty to keep a careful lookout for following vehicles when slowing down or stopping—an issue we do not decide—the error was harmless. *See Wright v. Over–The–Road and City Transfer Drivers,* 945 S.W.2d 481, 493 (Mo.App.1997) (a trial court's error in granting a motion for directed verdict does not require reversal and remand if the grant of the motion was correct on an alternative basis not relied upon by the trial court); *Wilkerson v. Mid–America Cardiology,* 908 S.W.2d 691, 697 (Mo.App. 1995) (same holding). The Wilkersons did not make a submissible case on the issue of Williams' failure to keep a careful lookout because they failed to prove the essential element of causation. *See Bolhofner v. Jones,* 482 S.W.2d 80, 83 (Mo.App.1972). The trial court should have sustained the DAL's motion for directed verdict filed at the close of all the evidence and entered judgment for her as a matter of law. *See Beer v. Upjohn Co.,* 943 S.W.2d 691, 695 (Mo.App.1997) (in the absence of proof of proximate causation, the trial court did not err in directing a verdict against plaintiffs). Since the jury reached the same result without having been so directed, it is appropriate for us to affirm the judgment that was entered after the return of its verdict. *See Burks v. Buckmiller,* 349 S.W.2d 409, 412 (Mo.App.1961).

■ Although this resolves the issues presented by the parties, there is one remaining matter that requires our attention. The judgment entered by the trial court lists Williams as the defendant. "Courts have jurisdiction to render judgments for or against viable entities only. A dead person is by definition not a viable entity." *Holmes v. Arbeitman,* 857 S.W.2d

442, 443 (Mo.App.1993). This appears to be a clerical error because the trial court properly ordered the DAL to be substituted as the named party-defendant in this case prior to trial. *See* RSMo (2000) § 537.021.1(2). We are directed by Rule 84.14 to finally dispose of a case unless justice otherwise requires. To that end, we are authorized to "give such judgment as the court ought to give." *Id.; see, e.g., Audsley v. Allen,* 774 S.W.2d 142, 146–47 (Mo. banc 1989). Therefore, we modify the judgment in two respects: (1) the named party-defendant in this case is corrected to be "DONNA HANNAH, in her capacity as Defendant *ad litem* for Melvin F. Williams, Deceased, Defendant."; and (2) the second full sentence of the judgment is corrected to state, "The Defendant appears by her attorney, Paul F. Sherman." In all other respects, the judgment is affirmed.

PARRISH, J., and RAHMEYER, C.J.–P.J., concur.