David **KASPER**, Et Ux., Appellants,

v.

**Randall W. WELHOFF, Et Al., Respondents.**

No. WD 69329.

Missouri Court of Appeals, Western District.

Sept. 8, 2009.

Motion for Rehearing and/or Transfer to Supreme Court Denied Oct. 27, 2009.

As Modified Oct. 27, 2009.

Application for Transfer Denied Dec. 22, 2009.

Matthew J. Hamilton, Esq., Pleasant Hill, for Appellants.

Jane A. Landrum, Esq., Kansas City, MO, for Respondent Matthew J. Hamilton.

Michael T. Halloram, Esq., Overland Park, KS for Respondent Jerry Click.

Mark D. Chuning, Esq., Kansas City, MO, for Respondent Randall Welhoff.

William M. Mallory, Esq., Overland Park, KS for Respondent Wilma Strickland.

Before JAMES E. WELSH, P.J., VICTOR C. HOWARD, and ALOK AHUJA, JJ.

ALOK AHUJA, Judge.

Plaintiffs–Appellants David and Rhonda Kasper appeal from the circuit court's entry of summary judgment in favor of Defendants–Respondents Jerry Click, Randall Welhoff, Charlene Tolly, and Wilma Strickland. For the reasons set forth below, we reverse, and remand the case to the circuit court for further proceedings.

## Factual Background

This case arises out of a five-car collision that occurred on Missouri Highway 291, a

two-lane road, on May 31, 2002.[1] The group of vehicles was traveling south-bound, in close succession, at approximately fifty-five miles per hour in the western lane of traffic. The first car, a Chevrolet Blazer, was driven by Click; the second, a gray Mercury Cougar, by Tolly; the third, a white Ford Crown Victoria, by Strickland; and the fourth, a Ford F–150 truck, by Welhoff; David Kasper was driving the fifth vehicle, a Mercury Topaz. The order of the vehicles can be illustrated as follows:

Kasper → Welhoff → Strickland → Tolly → Click

A semi-tractor trailer was parked on the right, western side of the highway; a ditch was located just to the south of the parked trailer. At the time of the accident, three vehicles were traveling north in the eastern lane of traffic.

Without warning or signaling, Click slammed on his car's brakes, came to an almost complete stop, and then turned left (to the east) onto a side road. Tolly, Strickland, and Welhoff also braked rapidly, coming to a complete stop on the highway. (As discussed in greater detail below, the parties dispute whether, before Kasper's collision with Welhoff, the Strickland and Welhoff vehicles were able to stop before hitting the cars immediately in front of them.) Kasper had been traveling at the speed limit of fifty-five miles per hour, at what he characterized as a safe distance behind Welhoff. Kasper lost sight of Welhoff's truck when it went over a hill. When Kasper crested the hill and saw Welhoff's vehicle again, he testified that Welhoff's brake lights were not illuminated. Kasper glanced in his rearview mirror at a dump truck that was following behind him. When he looked back to the front, he saw that Welhoff's brake lights were lit. Kasper applied his brakes in an attempt to stop, but was unable to do so before colliding with Welhoff.

The Kaspers filed suit against Click, Tolly, Strickland, and Welhoff, alleging that David Kasper suffered injuries as a result of the collision, and that Rhonda Kasper suffered a loss of consortium. The trial court granted each of the Respondents' motions for summary judgment, finding that: (1) David Kasper's admissions established that it was his own inattention to the vehicles ahead that was the proximate cause of the accident; and (2) the conduct of Tolly, Strickland, and Click was too remote to constitute the proximate cause of the Kaspers' damages.

This appeal followed.

### Analysis

The propriety of a grant of summary judgment is purely an issue of law which this Court reviews *de novo*. The criteria on appeal for testing the propriety of summary judgment are no different from those which should be employed by the trial court to determine the propriety of sustaining the motion initially. This Court reviews the record in the light most favorable to the party against whom judgment was entered. Summary judgment is appropriate where the moving party has demonstrated, on the basis of facts as to which there is no genuine dispute, a right to judgment as a matter of law.

*Hill v. Ford Motor Co.*, 277 S.W.3d 659, 664 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)). "'As the trial court's judgment is

---

1. Because the Kaspers were the summary judgment non-movants, the facts are set forth in the light most favorable to them. *Hill v.* *Ford Motor Co.*, 277 S.W.3d 659, 662 n. 3 (Mo. banc 2009).

founded on the record submitted and the law, an appellate court need not defer to the trial court's order granting summary judgment.'" *Thomas v. Clay County Election Bd.*, 261 S.W.3d 574, 577 (Mo. App. W.D.2008) (citation omitted).

In their first Point, the Kaspers argue that the circuit court erred in granting summary judgment because genuine issues of material fact existed as to whether the Respondents' actions actually and proximately caused the collision.

As in all tort cases, the Kaspers "must prove that each defendant's conduct was an actual cause, also known as cause-in-fact, of the[ir] injur[ies]." *City of St. Louis v. Benjamin Moore & Co.*, 226 S.W.3d 110, 113 (Mo. banc 2007). As the *Benjamin Moore* Court explained,

> Any attempt to find liability absent actual causation is an attempt to connect the defendant with an injury or event that the defendant had nothing to do with. Mere logic and common sense dictates that there be some causal relationship between the defendant's conduct and the injury or event for which damages are sought.

*Id.* at 113–14 (quoting *Callahan v. Cardinal Glennon Hosp.*, 863 S.W.2d 852, 862 (Mo. banc 1993)). Subject to a narrow exception not applicable here, "[i]n most cases, the plaintiff must establish actual causation by showing that the alleged harm would not have occurred 'but for' the defendant's conduct." *Id.* at 114. "Once actual causation has been established, the issue becomes one of legal cause—also known as proximate cause—that is, whether the defendant should be held liable because the harm is the reasonable and probable consequence of the defendant's conduct." *Id.*

The practical test of proximate cause is generally considered to be whether the negligence of the defendant is that cause or act of which the injury was the natural or probable consequence. . . . Thus, from the essential meaning of proximate cause arises the principle that in order for an act to constitute the proximate cause of an injury, some injury, if not the precise one in question, must have been reasonably foreseeable. The cases discussing proximate cause contain the exasperating caveat that in deciding questions of proximate cause and efficient, intervening cause, each case must be decided on its own facts, and it is seldom that one decision controls another.

*Krause v. U.S. Truck Co.*, 787 S.W.2d 708, 710 (Mo. banc 1990) (citations and internal quotation marks omitted). "The negligence of the defendant need not be the sole cause of the injury, so long as it is one of the efficient causes thereof, without which injury would not have resulted." *United Mo. Bank, N.A. v. City of Grandview*, 105 S.W.3d 890, 896 (Mo.App. W.D. 2003) (internal quotation marks and citations omitted).

### I.

We first consider defendant Welhoff, who was driving the vehicle immediately in front of the Kaspers.

Missouri courts have regularly found that "negligence may be predicated on conduct that involves the slowing of a vehicle suddenly on a highway without first providing adequate and timely warning of the intention to slow." *Ruzicka v. Ryder Student Transp. Servs., Inc.*, 145 S.W.3d 1, 10 (Mo.App. S.D.2004) (citing *Thienes v. Harlin Fruit Co.*, 499 S.W.2d 223, 226–27 (Mo.App.1973)).[2]

---

**2.** Thus, while trailing drivers may also have obligations to keep a careful lookout, and

The circuit court held that the fact that Kasper admitted to briefly glancing away from Welhoff's truck established, as a matter of law, that Kasper could not state a claim based on Welhoff's alleged failure to provide an adequate and timely warning. However, in *Hawthorne v. Hills*, 861 S.W.2d 337 (Mo.App. W.D.1993), this court held that a trailing driver could make a submissible warning claim despite the fact that the driver had briefly looked away before an accident. *Hawthorne* involved four cars, although only three collided. This court held that the evidence was sufficient to support the jury's verdict in favor of a passenger (Hawthorne) who was riding in the trailing car (Car # 4, driven by Hills), against the driver who stopped immediately ahead of the trailing vehicle (Car # 3, driven by Lysinger). In *Hawthorne*, Car # 1 (driven by Burton) stopped to turn left across a highway. Car # 2 (driven by Shoemaker) was able to stop, but saw Car # 3 coming from behind. Car # 2 swerved onto the right shoulder of the highway to afford Car # 3 more room to stop. Car # 3 was unable to stop, however, and hit Car # 1, either before or after being hit by Car # 4. *Id.* at 342. Plaintiff, a passenger in Car # 4, sued Driver # 3 for negligence in failing to provide an adequate and timely warning of his intention to stop.

In *Hawthorne*, like here, Driver # 4 testified that she observed Car # 2 swerve off the roadway one to two seconds before the accident, when she was traveling approximately four car lengths behind Car # 3. *Id.* at 340. "When she redirected her attention to [Car # 3—the vehicle directly in front of her], she applied [her] brakes ... and unsuccessfully tried to avoid striking [Car # 3].... She does not know whether

the brake lights on [Car # 3] were activated." *Id.* at 340. Although Driver # 3 claimed, based on this testimony, that "neither [Driver # 4 nor her passenger] could have seen him signal his intent to slow or stop the vehicle he was driving because neither of them were looking at his vehicle prior to the collision," *id.* at 341, we held that the evidence was sufficient to support the jury's verdict against Driver # 3:

[Driver # 3] claims that because [Driver # 4 and her passenger] did not see his brake lights when he applied the brakes on his vehicle and because the brake lights on his vehicle worked before and immediately after the accident, his conduct was not the proximate cause of [plaintiff's] injury. However, the instruction requires that in order to find for the plaintiff the jury must find in paragraph first that an "adequate" and timely warning was not given. "Adequate" is defined as "equal to or sufficient for some (specific) requirement; proportionate, or correspondent; fully sufficient; ... legally sufficient, such as is lawfully and reasonably sufficient." Thus, [Driver # 3] was required to give [Driver # 4] a "fully sufficient" and timely warning. This of course would be a warning which would give [Driver # 4] enough time to stop. [Car # 3] observed the stopped [Car # 1] one quarter of a mile ahead. He had one quarter of a mile to warn that he would stop or slow his vehicle. The evidence was sufficient for the jury to find that [Driver # 3]'s failure to negotiate a more gradual and controlled stop thereby activating earlier the brake lights on his vehicle and thereby providing an earlier and "adequate and timely warning"

maintain a safe distance from cars ahead, this does not negate a leading driver's duties to those behind.

was the proximate cause of [plaintiff's]'s injury. The point is denied.

*Id.* at 342.

As in *Hawthorne*, there is sufficient evidence from which a jury could find that Welhoff failed to provide Kasper with a warning sufficient to give Kasper enough time to stop before colliding with Welhoff's car. Kasper testified that he was following Welhoff at a safe distance, meaning a distance sufficient to permit him to safely stop his vehicle if necessary without hitting the forward vehicle; he described this distance as three to five car lengths, or more. Kasper testified that, as he crested the hill, he saw Welhoff's truck, brake lights unlit. Kasper then glanced in his rearview mirror at the vehicle behind. When Kasper looked forward again, Welhoff's brake lights were lit, but Kasper had insufficient time in which to negotiate a safe stop. The testimony of Tolly and Strickland indicated that Welhoff was "riding close," approximately twenty to twenty-five feet behind Strickland, and was not "allow[ing] enough room [so that] in case you have to stop you've got enough time to stop."

In these circumstances, and in light of the *Hawthorne* decision, the fact that Kasper may have diverted his eyes briefly to his rear-view mirror before the impact occurred does not establish Welhoff's right to judgment as a matter of law.[3]

Welhoff relies on *Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240 (1955), *Brassfield v. Sears*, 421 S.W.2d 321 (Mo. 1967), and *Knollman v. Kennedy*, 429 S.W.2d 775 (Mo.App.1968), to argue that

his actions could not be the proximate cause of the Kaspers' damages. But each of those cases is plainly distinguishable. In *Branstetter*, the evidence indicated that the driver of the trailing vehicle was gazing at the flooding Missouri River as his vehicle crossed a bridge, and did not slow his speed or attempt to stop until his vehicle was fifteen feet from the lead driver's, when his eleven-year-old nephew yelled to him to "look out." 274 S.W.2d at 244. In *Brassfield*, the rear-ending driver testified that he was "concentrating" and "focusing" on a car driving erratically two cars ahead of him. 421 S.W.2d at 323. The trailing driver also testified that if he had been watching in front of him, he could have seen the immediately preceding car, and that he could have stopped; he acknowledged that he did not know whether the forward car's brake lights were lit. *Id.* Given this testimony, there was simply no evidence to show that the rear-ending driver would have seen or heeded any warning: "[u]nder [the rear-ending driver's] own testimony he was not observing the car ahead until it was too late to stop or slow and avoid hitting [the preceding driver]." *Id.* at 324.

Similarly, in *Knollman*, the rear-ending driver testified that he was watching "a woman crossing the street and the next thing I knew, there was an impact"; he did not even see the vehicle he hit before impact. 429 S.W.2d at 777. "We think a perusal of defendant's testimony . . . shows conclusively that after plaintiff and defendant started up, defendant was look-

---

**3.** Respondents make much of the fact that, after recounting the events leading up to the accident as described in the text, in his deposition David Kasper agreed with counsel's statement that "the reason [Kasper] believe[ed] that [he] w[as] unable to stop and smashed into the rear of" Welhoff's vehicle was that he had glanced in his rear-view mirror. Given that Respondents' negligence need not be the sole cause of the Kaspers' injuries, and given David Kasper's testimony that he was following Welhoff at a distance which gave him sufficient time to stop and that Welhoff's brake lights were unlit before Kasper's brief glance in his mirror, we do not find the statement Respondents cite to be dispositive of the causation issue.

ing to his left following the course of the woman crossing the street and never again saw the movement of plaintiff's car until the collision took place." *Id.* at 779. Having not looked back to the car he was following before the impact, the rear-ending driver was in no position to say that any warning given was inadequate or untimely. *Id.*("As we have pointed out [the rear-ending driver] would not have seen any warning of [the preceding driver]'s intention to slow had it been given or not given.").

As explained above, and as was the case in *Hawthorne,* "[u]nlike the factual situations in [*Branstetter,*] *Brassfield* and *Knollman,* substantial evidence was presented to support the finding that the collision between [Welhoff's vehicle] and [Kasper]'s vehicle could have been avoided if [Welhoff] had provided adequate and timely warning of his intention to slow and stop." *Hawthorne,* 861 S.W.2d at 342. The circuit court's grant of summary judgment to Welhoff is accordingly reversed. Further, the court's grant of summary judgment to the other Respondents cannot be sustained based on the Kaspers' purported failure to establish a genuine issue as to the adequacy of Welhoff's warning.

## II.

■ The other Respondents also argue that summary judgment was properly granted in their favor on the basis that their negligence, if any, was too remote to constitute the proximate cause of the Kaspers' injuries. We disagree.

Taking the evidence in the light most favorable to the Kaspers, the testimony would support a finding that each of the Respondents was negligent. Tolly testified that Click "all of a sudden, . . . slams on his brake in a dead stop, no turn signal, no nothing, just instant," and that she only

avoided a collision with Click's car by "maybe a foot."

He turned real quick, with no signal, in front of an oncoming car, which was coming northbound, pulled out in front of the car and just barely missed from that car hitting him when he made his turn. It's kind of like, it made you wonder if he had did it on purpose because he stopped and looked and that's highly unusual for something like that. . . .

. . . A [trailing driver] has to know that you're going to turn on a road like that, otherwise, it causes wrecks. It's extremely dangerous not to let somebody know what you're doing.

Although each of the Respondents claimed that *he or she* was driving safely, each offered testimony that *the others* were following too closely to safely stop their vehicles. In addition to testifying that both Tolly and Strickland were "just tailgating real bad," Click also testified that at the time of the accident, Tolly and her passenger were carrying on a "very active" conversation, during which Tolly would glance towards her passenger "periodically."

Although the summary judgment evidence indicates that Tolly was able to stop her vehicle before hitting Click, this does not render Click's allegedly negligent driving too remote to absolve him of liability. In *Foley v. Hudson,* 432 S.W.2d 205 (Mo. 1968), the Supreme Court held that a forward vehicle's negligent failure to provide an adequate warning could constitute a proximate cause of injuries to drivers following several vehicles behind. *Foley* concerned a fatal accident involving four trucks. Truck #1 (driven by Hudson) jack-knifed on a highway. Driver #1 attempted to move his truck off of the roadway. As he did so, three trucks approached: Truck #2 (driven by Short), Truck #3 (driven by Miller), and Truck

# 4 (driven by plaintiff's decedent, Foley). Driver # 2 testified that he did not see Truck # 1 for some time because its lights were not on. When he saw Truck # 1, Driver # 2 slowed his truck, without stopping it, to avoid an accident. Driver # 3 testified that he brought his truck to a halt approximately a foot away from Truck # 2, after seeing Truck # 2's brake lights. Truck # 3 was then hit by Truck # 4, killing plaintiff's decedent.

*Foley* specifically rejects Driver # 1's argument that his failure to provide adequate warning of his presence, by having his truck's lights on, could not be the proximate cause of Truck # 4's collision with Truck # 3.

> The evidence most favorable to plaintiff is that [Driver # 1] did not turn on his lights until the tractor-trailer unit driven by [Driver # 2] was within 20 or 30 feet of him. It is true that [Driver # 2] had seen the truck as a dark object earlier than that at a time when he estimated that the dark object was 75 or so feet away. Defendant argues that the statutory requirement for lights on a vehicle is only to warn of the presence of the vehicle. He asserts that their absence cannot have been the proximate cause of the accident when the evidence was that [Driver # 2] had seen the truck without lights in time to avoid actual collision between [Truck # 2] and [Truck # 1]. This argument, however, overlooks the fact that [Driver # 2], his vision somewhat obscured by the lights of a parked car, had traveled from the crest of the hill to a point opposite the parked vehicle before he saw the unlighted [Truck # 1] and applied his brakes. If the lights on [Truck # 1] had been burning, [Driver # 2] might have seen his truck from the crest of the hill and applied his brakes sooner, giving earlier warning to [Driver # 3] and possibly to [Driver # 4].... Earlier notice to [Driver # 3]

> could have permitted him to slacken his speed without stopping. Thus, the jury could have found that absence of [Driver # 1]'s lights contributed to cause the collision between [Truck # 3 and Truck # 4].

*Id.* at 208.

Under *Foley,* whether Click's negligence proximately caused the accident which injured the Kaspers cannot be decided as a matter of law on summary judgment. Given the evidence before the trial court, a reasonable factfinder could find that, if Click had given adequate warning of his intention to turn, this would have enabled the other drivers in the line of cars to slow more gradually, and to provide further notice to the vehicles following them. The summary judgment entered in Click's favor must be reversed.

Respondents rely on a series of decisions which, they contend, establish that any negligence of the drivers of forward vehicles in a multi-car collision cannot constitute a proximate cause of injuries to following drivers, where the intervening drivers are able to successfully stop before hitting the vehicles immediately in front of them. Each of the cases Respondents cite is, however, distinguishable on its facts. (As to Strickland and Tolly, there is also a genuine factual issue as to whether the vehicles immediately behind them were in fact able to safely stop before hitting the Strickland and Tolly vehicles (as we discuss in further detail below).)

We discussed the first such case, *Branstetter,* 274 S.W.2d 240, above. *Branstetter* did refer to the fact that the forward drivers were each able to successfully stop before hitting the vehicle in front of them. *Id.* at 245–46. However, the basis for its decision that the trailing driver had no claim against those ahead was the evidence establishing that he "did not see the stop

signals [of the vehicles ahead] because at the time he was looking at the flood waters and was not looking ahead." *Id.* at 246. Here, as we have discussed above, the evidence would permit a jury to find that David Kasper was in a position to heed any warning the cars ahead provided.

In the second case, *King v. Ellis,* 359 S.W.2d 685 (Mo.1962), involving a three-car accident, the Supreme Court again noted that, although "[t]he evidence tends to show that the defendant [Driver # 1] was negligent," "[t]he plaintiff [Driver # 2] was able to slow her automobile so as to avoid contact with the defendant's truck so that she was not injured directly as a result of the defendant's negligence." *Id.* at 688. The Court emphasized, however, that the proximate cause of Driver # 2's injuries was not Driver # 1's driving, but was instead the failure of Car # 3's brakes. Driver # 3 testified that "if his brake line had not broken he could have pulled up and stopped behind the plaintiff's car without striking it," *id.* at 687; "[w]ithout the sudden and unexpected failure of the brakes on [Driver # 3's] car in the present case, the collision would not have occurred." *Id.* at 689. Notably, *Foley* distinguishes *King* on just this basis. *Foley,* 432 S.W.2d at 209 ("There is no intervening cause similar to the admitted brake failure in that case.").

*Butcher v. Main,* 371 S.W.2d 203 (Mo. 1963), involved a four-car accident. There, while the cars were traveling in a line on a highway, Car # 1 stopped suddenly without signaling, and Car # 2 ran into Car # 1. Driver # 3, the plaintiff in the case, was able to stop her car before colliding into Car # 2, but was then shoved into Car # 2 when Car # 4 hit her from behind. On appeal, the Missouri Supreme Court held that the trial court did not err in granting a directed verdict in favor of

Drivers # 1 and # 2 as to Driver # 3's claim that they were negligent:

> While it may be assumed that [Drivers # 1 and # 2] were negligent, it may be said as a matter of law that such negligence was not a proximate cause of plaintiff [Driver # 3]'s injuries. *Since plaintiff [Driver # 3] was able to bring her car to a gradual normal stop without colliding with the car ahead,* it is obvious that the efficient, intervening cause and the proximate cause of plaintiff [Driver # 3]'s injuries is the fact that defendant [Driver # 4's] car collided with the rear end of plaintiff's car.

*Id.* at 207 (emphasis added). Here, the evidence would permit the jury to find that none of the drivers ahead of the Kaspers were able to come to a "gradual, normal stop," but instead that they stopped abruptly (and in the cases of Welhoff and Strickland, unsuccessfully), without giving adequate warning of their actions.

The final case on which Respondents rely is *Wilkerson v. Williams,* 141 S.W.3d 530 (Mo.App. S.D.2004). That case involved three cars. Car # 1 stopped suddenly to avoid hitting an animal in the road. Car # 2 was able to brake in time to avoid colliding with Car # 1. Car # 3 was not able to stop, however, and ran into Car # 2, propelling Car # 2 into Car # 1. Driver # 3 sued Driver # 1 for negligence, asserting that Driver # 1 "negligently operated his vehicle by failing to keep a careful lookout and by suddenly and unexpectedly stopping his vehicle in the road without given an adequate and timely warning." *Id.* at 532. The trial court directed a verdict in Driver # 1's favor on the careful lookout claim. *Id.* at 533. The jury returned a verdict in Driver # 1's favor on the claim that he stopped without giving an adequate and timely warning. *Id.* Driver # 3 appealed the directed verdict, and the Southern District affirmed.

After discussing the decisions in *Branstetter*, *King*, and *Butcher* in detail, the Court concluded "that [Driver # 3's] negligence was the proximate cause of the collision as a matter of law," and accordingly affirmed the trial court's judgment. *Id.* at 536. *Wilkerson* does not suggest that a trailing driver may never establish proximate causation as to drivers ahead, based simply on the fact that some of the forward drivers were able to successfully stop their vehicles before hitting each other.[4]

■ Respondents Tolly and Strickland would not be entitled to summary judgment, even if the law were as they claimed. While there is some evidence, from the depositions of Strickland, Welhoff, and Welhoff's wife, that the Tolly, Strickland, and Welhoff vehicles did not come into contact until after Kasper collided with Welhoff, there is also evidence to the contrary. Thus, Tolly testified that Strickland hit her, and Welhoff's truck hit Strickland's car, *before* Kasper collided with Welhoff:

A: ... Well, I do know that the lady behind me [Strickland] followed too close and because of that she hit me before David [Kasper] hit everybody. *She hit me, then the [Welhoff] pick-up behind her hit her, and then David [Kasper] just rammed everybody like a freight train.*

Q: Did you actually observe the sequence of impacts the way you just described it? In other words, did you actually see the car behind you hit your vehicle before the other two cars were involved? Did you actually see that?

A: You mean look in the mirror?

Q: Correct.

A: Well, when you get hit, you're going to naturally look behind you and see who in the world hit you. When she [Strickland] hit me, it wasn't like as severe as David [Kasper]'s. Now, that was the worst. But when it hit me, of course I'm going to look. *I wanted to see what happened and then when [Welhoff's] pick-up hit her and then David hit everybody, which made it like a freight train ....*

. . . .

A: ... When I stopped because of Mr. Idiot [Click] in front of me, when I stopped to avoid hitting him, the impact was so quick. That's because of her [Strickland] riding too close. *When she hit me, then [Welhoff's] pick-up hit her because we still felt the ramming and the pushing. Then David [Kasper] come along and he rammed and hit everybody.*

. . . .

Q: And, Charlene, you saw the white Crown Victoria [Strickland] behind you contact with your car, the truck [Welhoff, car 4] behind the white Crown Victoria contact—

A: Yeah.... When [Click] stopped, my first reaction was, I'm going to be hit in the rear because of this idiot, which that's what he caused. *She [Strickland] hit me, [Welhoff's] truck hit her, then David [Kasper] come along and hit everybody. ...*

Q: And, Charlene, *you personally observed this by looking in your rearview mirror; is that correct?*

A: Yes....

Even if (contrary to our conclusion above) prior caselaw had established a hard-and-

---

**4.** We also note that, in *Wilkerson*, the plaintiff did not challenge the jury's verdict in favor of the lead driver on plaintiff's claim of failure to provide an adequate and timely warning.

fast rule that proximate causation cannot be established where intervening vehicles are able to stop without incident before a trailing driver's collision, a genuine issue nevertheless exists as to whether Strickland and Welhoff were, in fact, able to stop successfully before Kasper's car rear-ended Welhoff's truck.

## Conclusion

The trial court's entry of summary judgment in favor of the Respondents is reversed, and the case remanded for further proceedings.[5]

All concur.

---

**5.** Given our disposition, we find it unnecessary to address Kasper's second Point Relied On, which argues that the trial court erroneously refused to consider evidence he belatedly sought to introduce to defeat summary judgment.