**John R. RAGSDALE, et al., Respondents,**

v.

**Shelly B. ARMSTRONG, et al., and Shelter Mutual Insurance Company, Appellants.**

No. 77974.

Supreme Court of Missouri, En Banc.

Feb. 20, 1996.

Rehearing Denied March 26, 1996.

Edwin J. Carlton, Columbia, for appellants.

Rex Gump, Moberly, for respondents.

PER CURIAM.

Four judges would reverse the judgment of the circuit court. Four judges

would allow respondents to recover at least $40,000 under the two policies at issue. Accordingly, the judgment of the circuit court is reversed and the case is remanded for entry of judgment in respondents' favor in the amount of $40,000, plus such other costs or assessments as are consistent herewith.

PRICE, J., concurs in separate opinion filed.

BENTON, J., concurs in result in separate opinion filed.

HOLSTEIN, C.J., and WHITE, J., concur in opinion of BENTON, J.

LIMBAUGH, J., dissents in separate opinion filed.

ROBERTSON, J., dissents in separate opinion filed.

COVINGTON, J., concurs in opinion of LIMBAUGH, J.

PRICE, Judge, concurring.

I agree with the dissenting opinion of Judge Robertson that an injured motorist may recover up to the statutory minimum under his uninsured motorist coverage if his injury is caused by a motorist that is insured for less than the statutory minimum amount. I differ with Judge Robertson in that I believe that recovery should be allowed on a per policy basis, as discussed by Judge Benton in part III of his opinion. I would allow respondents to recover $25,000 under each policy, offset by the $10,000 already received, for a total recovery of $40,000.

BENTON, Judge, concurring in result.

Shelter Mutual Insurance Company appeals a judgment for damages under the uninsured motorist clauses in two of its insurance policies. After the Court of Appeals affirmed the trial court, this Court granted transfer. *Mo. Const. Art. V § 10.* The circuit court should be affirmed, but recognizing the realities of this case, I concur in the result of the per curiam.

## I.

Plaintiffs John and Donna Ragsdale, husband and wife, are Missouri residents. Defendant Shelley Armstrong is a Louisiana resident. In November 1990, Armstrong and the Ragsdales had an auto accident in Missouri, due to Armstrong's fault.

Armstrong's liability insurance policy had limits of $10,000 per person and $20,000 per accident. Shelter issued two insurance policies to the Ragsdales for two different vehicles with uninsured motorist coverages of $100,000 per person and $50,000 per person, respectively.

The Ragsdales sued Armstrong for negligence, and Shelter for uninsured motorist coverage. Donna Ragsdale settled with Armstrong for $7,500, her total damages. John Ragsdale settled for the policy limits of $10,000, though his damages exceeded $150,000. Finding Armstrong an uninsured motorist, the circuit court awarded John Ragsdale $140,000—the summed policy limits ($100,000 + $50,000) *less* the settlement with Armstrong ($10,000).

## II.

The starting point to determine Shelter's liability is the insurance contract. *See First National Insurance Company of America v. Clark,* 899 S.W.2d 520, 521 (Mo. banc 1995). In its policy, Shelter agrees to pay damages for bodily injury that the Ragsdales are legally entitled to recover from the operator of an uninsured motor vehicle. The Ragdales' insurance policy defines "*uninsured motor vehicle* " as "a *motor vehicle* not insured by a *bodily injury* liability ... insurance policy" (bold type in original). The issue is whether Armstrong's motor vehicle was insured by a "motor vehicle ... insurance policy."

At first, it might appear that Armstrong had such a policy.[1] Here, the insurance contract does not define "motor vehicle insurance policy." When an insurance contract does not define a term, it must be interpreted in accordance with the law of this state. *Ward v. Allstate Insurance Co.,* 514 S.W.2d 576, 578 (Mo. banc 1974):

1. In other states, "no case has been found denying recovery under an uninsured motorist policy when the tortfeasor carried some liability insurance, but with limits less than the statutory minimum...." 24 ALR4th at 19 n. 10, 22 n. 11, 26 n. 18.

It is well established in Missouri that '[E]xisting and valid statutory provisions enter into and form a part of all contracts of insurance to which they are pertinent and applicable as fully as if such provisions were written into them.'

Section 379.203 RSMo 1986 [2] required that the contract between Shelter and the Ragsdales include uninsured motorist coverage. Four times, section 379.203 explicitly references chapter 303, the Motor Vehicle Financial Responsibility Law. Chapter 303 defines "motor vehicle liability policy" as a: "policy of liability insurance ... subject to limits ... as follows: twenty-five thousand dollars because of bodily injury to or death of one person in any one accident...." §§ 303.190.1, 303.190.2(2); cf. 303.190.7, 303.030.5.

Because Armstrong did not have such a policy, her vehicle was uninsured by the terms of the Ragsdales' policy. Shelter contracted with the Ragsdales in Missouri, using words with a specific meaning under Missouri law. Shelter should be held to have intended the statutory meaning.

Shelter agrees that Armstrong is uninsured, in view of Cook v. Pedigo, 714 S.W.2d 949, 952[3] (Mo.App.1986). Shelter argues, however, that its liability is limited to $15,000—the difference between Armstrong's coverage ($10,000) and the minimum required by Missouri law ($25,000). §§ 303.030.5, 379.203.1.

This Court has long recognized freedom of contract in liability insurance. First Nat. Ins. Co., 899 S.W.2d at 521. A motorist purchases uninsured coverage above the statutory minimum so that, upon a proper claim, recovery will include the additional uninsured motorist coverage. Id. at 522. The General Assembly specifically anticipated the purchase of excess or additional coverage in § 303.190.7. In this case, the Ragsdales are entitled to all the coverage they purchased, which distinguishes the case of Halpin v. American Family Mutual Insurance Company, 823 S.W.2d 479, 482–83 (Mo. banc 1992), where an exclusion prohibited all relevant coverage, but the statute required minimum coverage.

Shelter argues that Cook v. Pedigo, 714 S.W.2d 949, 952[4] (Mo.App.1986), limits the amount of John Ragsdale's recovery to "the difference between the tortfeasor's liability insurance and the minimum liability requirements." Cook, however, analyzes neither the terms of the policy, nor section 303.190. On this point, Cook should no longer be followed.

### III.

Shelter also asserts that the trial court erred in stacking the Ragsdale's two policies. Missouri requires the stacking of uninsured motorist coverages where the insured has multiple policies. First Nat. Ins. Co., 899 S.W.2d at 522; Cameron Mutual Insurance Co. v. Madden, 533 S.W.2d 538, 544–45 (Mo. banc 1976); Krombach v. Mayflower Insurance Co., 827 S.W.2d 208, 212 (Mo. banc 1992). The Ragsdales' policies must be stacked.

### IV.

The judgment of the circuit court should be affirmed.

LIMBAUGH, Judge, dissenting.

I respectfully dissent. Although Judge Benton's plurality opinion correctly states that we should look first to the terms of the policy, we need direct our attention no further. The plain language of the policy definition provides all that is needed to resolve the case, and it is unnecessary, if not improper, to divert to a statutory definition from the Motor Vehicle Financial Responsibility Law. The Ragsdales' policies defined "uninsured motor vehicle" as "(a) a motor vehicle not insured by a bodily injury liability ... insurance policy...." The words "not insured" necessarily refer to a person not protected by liability insurance. Because the Armstrong vehicle *was* insured by a liability insurance policy at the time of the accident, the Ragsdales should not be able to invoke the uninsured motorist coverage.

To avoid this harsh result, Judge Benton's plurality would impose the § 303.190 defini-

2. Unless otherwise indicated, all statutory references are to RSMo 1986.

tion so that the term "motor vehicle liability policy," as used in the policies' definition of "uninsured motor vehicle," becomes "motor vehicle liability policy with limits of at least $25,000/$50,000." The fallacy of this approach is that § 303.190, by its own terms, applies only to the provisions of Chapter 303, the Motor Vehicle Financial Responsibility Law. Moreover, the sole purpose of the § 303.190 definition is to establish the kind of motor vehicle liability insurance policy that is sufficient to show proof of financial responsibility. That section does not purport to govern the contents of uninsured motorist provisions, like Ragsdales', which are governed, instead, by § 379.203. Neither § 379.203, nor any other statute pertaining to uninsured motorist coverage, defines "motor vehicle liability policy." For that reason, I would rely solely on the plain language of the policy.

ROBERTSON, Judge, dissenting.

I respectfully dissent.

This is one of those difficult cases in which no resolution is supported by both the policy of the state of Missouri expressed in the statutes relating to motor vehicle liability insurance and the terms of the insurance contract between the Ragsdales and Shelter Mutual Insurance Company.

Judge Limbaugh's dissent, true to the language of the policy and the common usage of the words used in the insurance policy, finds that the existence of some insurance coverage in the defendant, Armstrong, is sufficient to defeat the policy's coverage for uninsured motorists. Unfortunately, Judge Limbaugh's conclusion ignores the public policy of the state relating to uninsured motorist coverage set out in section 379.203.1, RSMo 1994, which requires a minimum of twenty-five thousand dollars in liability coverage by its reference to section 303.030, RSMo 1994.

Judge Benton scours the Shelter insurance policy for words that permit the Court to find Shelter intended to invoke the statutory definition of a "motor vehicle insurance policy." He concludes that the failure of Armstrong to have twenty-five thousand dollars in liability coverage is the same as Armstrong having no insurance at all. Once this leap is accomplished, Judge Benton has no difficulty invoking the uninsured motorist provisions of the contract, stacking the Ragsdale policies and providing the Ragsdales an additional $140,000 in coverage. Under Judge Benton's reasoning, this result obtains so long as the Armstrong insurance policy provided less than twenty-five thousand dollars in liability coverage. If, however, Armstrong's policy had provided twenty-five thousand dollars in coverage, the Ragsdales would be limited to that twenty-five thousand dollars. Thus, under Judge Benton's reasoning, the Ragsdales receive a windfall because they were injured by a person carrying less than the Missouri statutory minimum coverage.

I cannot concur in Judge Benton's interpretation of section 303.190 and its application of that statute to define the phrase "motor vehicle liability policy" contained in the Ragsdales' policies. I agree with Judge Limbaugh that section 303.190 applies only to the provisions of Chapter 303 of the Motor Vehicle Financial Responsibility Law and not to the contents of uninsured motorist provisions.

I would apply *Cook v. Pedigo,* 714 S.W.2d 949, 952 (Mo.App.1986), to limit the Ragsdales' recovery to $15,000, the difference between the Ragsdales' liability insurance and the minimum liability requirements. By specific reference, Section 379.203.1 requires all automobile insurance policies to provide uninsured motorist protection in an amount equal to or greater than the minimum liability requirements of $25,000/$50,000 under section 303.030.5. I believe these sections demonstrate a legislative intent to ensure motorists injured by a negligent and financially irresponsible motorist, i.e., an uninsured or underinsured motorist, a recovery equal to the statutory minimum amount. *Cook,* 714 S.W.2d at 952. I would indulge the fiction, demanded by the public policy set out in the statutes, that Armstrong was uninsured only to the extent that her liability coverage did not meet Missouri statutory minimums. I would, therefore, require Shelter to pay the $15,000 difference between the Missouri minimum insurance requirements and the amount of liability insurance Armstrong actually carried. I do not share the views expressed by Judge Benton and the

members of the Court who join his opinion or with Judge Price that the policies can be stacked. Missouri law requires the stacking of uninsured motorist coverage. Armstrong was not uninsured.

*Cook* has the virtue of applying the policy embodied in the statutes—which Judge Limbaugh does *not*—without requiring the leap across the statutes upon which Judge Benton relies. But *Cook* is rough justice at best. Only legislative clarification and/or more carefully drafted insurance contracts will provide a definitive answer.