Hugh BRYAN, Appellant,

v.

Joseph PEPPERS, Defendant,

and

State Farm Mutual Automobile Insurance Company, Respondent.

No. SD 30068.

Missouri Court of Appeals, Southern District, Division Two.

Sept. 28, 2010.

Motion for Rehearing or Transfer to Supreme Court Denied Oct. 20, 2010.

Application for Transfer Denied Nov. 16, 2010.

Steven E. Marsh, Hulston, Jones & Marsh, Springfield, for Appellant.

Monte P. Clithero, Kevin M. FitzGerald, Taylor, Stafford, Clithero, Fitzgerald & Harris, Springfield, for Respondent.

DANIEL E. SCOTT, Chief Judge.

This is the second appeal of this case. *See Bryan v. Peppers,* 175 S.W.3d 714 (Mo.App.2005)(*Bryan I* ), from which we freely borrow without further attribution.

### Factual and Procedural Background

On April 13, 1997, Hugh Bryan was driving his truck on Highway 65 south of Branson. The road was straight and flat with clear visibility ahead. Bryan brought his truck to a stop because the cars in front of him were not moving. Bryan heard something behind him and looked into his rear-view mirror. He saw Joseph Peppers' truck, which had a U–Haul trailer attached to it, approaching "too fast and smoke coming out from underneath the tires where they were obviously trying to stop." Peppers' truck struck the rear of Bryan's truck at approximately 8 to 10 miles per hour. Bryan was jolted by the impact, but he did not believe he had been hurt very badly at that time. Bryan got out of his truck and came back to check on the condition of Peppers and his two children, who were passengers in Peppers' vehicle. None of them was injured. After Bryan and Peppers talked for a few minutes and exchanged information, they both left the scene of the collision.

Bryan soon began to experience right elbow pain and tingling and numbness in his right hand. A neurosurgeon diagnosed a collision-related spinal cord contusion and recommended neck surgery, which Bryan underwent in June 2000, curing his symptoms. His post-accident medical bills totaled some $33,000.

Bryan sued Peppers and State Farm, which was Bryan's insurer, asserting a tort claim and a contract claim respectively.

In Bryan's tort claim, he alleged that he sustained personal injuries and property damage when Peppers negligently collided with the rear of Bryan's truck. In Bryan's contract claim, he sought to recover uninsured motorist (UM) benefits from State Farm. Bryan alleged that State Farm provided UM coverage because an unknown motorist, meeting the policy's definition of a "phantom" driver, negligently made a sudden and unexpected stop or turn on Highway 65 and thereby caused or contributed to the collision.

Peppers successfully moved to sever the claim against him for a separate trial, and it was tried first. The jury found for Bryan and awarded him $1,720.32 for personal injuries and $1,250 for property damage. Finding error in the severance/separate trial ruling and in other respects, this court reversed and remanded for a new trial on all issues. *Bryan I,* 175 S.W.3d at 718–23.

The new trial began on April 13, 2009. State Farm moved for a directed verdict after Bryan's opening statement. State Farm argued from *Wilkerson v. Williams,* 141 S.W.3d 530 (Mo.App.2004) and cases cited therein that since Bryan and all drivers ahead of him stopped without mishap, the lead driver's conduct could not, as a matter of law, have been the proximate cause of Peppers rear-ending Bryan. The court heard argument and took the issue under advisement overnight to review the transcript and cases cited by each party. After further argument the next morning, the court sustained the motion and granted State Farm "a directed verdict on the issue of causation," and the trial proceeded against Peppers alone. The jury again found for Bryan, this time awarding him $36,000 for personal injuries and $2,000 for property damage. The trial court entered judgment accordingly.

Peppers satisfied the judgment. Bryan acknowledged the satisfaction, and on the following day, filed this appeal of State Farm's directed verdict.

## Claim on Appeal

Bryan's sole point on appeal challenges the trial court's ruling that the lead driver's alleged negligence was not proximately causal as a matter of law since the whole line of vehicles, until Peppers, stopped without collision. Bryan claims the trial court misinterpreted his opening statement about what the lead driver did; improperly construed the opening statement and inferences most favorably to State Farm, rather than to Bryan; and misapplied the law regarding rear-end collision causation and intervening cause. Bryan argues that the trial court erred in basing its proximate cause ruling on this court's opinion in *Wilkerson* and cases cited therein, and that a recent Western District case shows that the trial court's proximate cause decision was wrong.

## Standard of Review

■ When a directed verdict is granted at the close of the plaintiff's opening statement, we review and broadly construe the petition and opening statement to determine if the plaintiff made a submissible case. *Intertel, Inc. v. Sedgwick Claims Mgmt. Services, Inc.,* 204 S.W.3d 183, 199–200 (Mo.App.2006).

## Analysis

In directing a verdict for State Farm, the trial court understandably cited *Wilkerson* (then the most recent appellate decision on this subject) and three Missouri Supreme Court cases considered therein.[1] All four of these cases involved a line-of-cars scenario like this one, in which some

---

1. *Butcher v. Main,* 371 S.W.2d 203 (Mo.1963); *King v. Ellis,* 359 S.W.2d 685 (Mo.1962); and

or all of the "middle" vehicles stopped without collision. All four cases held that the lead driver's conduct was too remote to be the proximate cause of a rear-end collision between vehicles at the end of the line. All four cases strongly support the trial court's ruling.

Bryan's arguments for reversal hinge primarily on two cases: *English v. Empire Dist. Elec. Co.*, 220 S.W.3d 849 (Mo.App. 2007) and *Kasper v. Welhoff*, 298 S.W.3d 59 (Mo.App.2009). *English* involved a construction site electrocution, not a car wreck. It is far less relevant, and Bryan's arguments therefrom are much less persuasive, than his reference to *Kasper*, which arose from this type of accident and merits closer consideration.

In *Kasper*, the last driver in a line of five cars rear-ended the fourth car and sued everyone ahead of him for stopping too quickly. The trial court entered summary judgment against him, finding (in part) the first three drivers' conduct too remote to have proximately caused the plaintiff's injuries. On appeal, the Western District distinguished *Wilkerson* and its cited cases in favor of *Foley v. Hudson*, 432 S.W.2d 205 (Mo.1968), and specifically quoted *Foley*'s description of the failure of a tractor-trailer, jackknifed on a snowy road at night, to "turn on his lights until the tractor-trailer unit driven by [Driver # 2] was within 20 or 30 feet of him." *Kasper*, 298 S.W.3d at 66 (quoting *Foley*, 432 S.W.2d at 208).

> If the lights on [Truck # 1] had been burning, [Driver # 2] might have seen his truck from the crest of the hill and applied his brakes sooner, giving earlier warning to [Driver # 3] and possibly to [Driver # 4].... Earlier notice to [Driver # 3] could have permitted him to slacken his speed without stopping.

Thus, the jury could have found that absence of [Driver # 1]'s lights contributed to cause the collision between [Truck # 3 and Truck # 4].

*Id.* (quoting *Foley*, 432 S.W.2d at 208). The Western District cited *Wilkerson*'s detailed discussions of *Branstetter*, *King*, and *Butcher*, but said "Wilkerson does not suggest that a trailing driver may never establish proximate causation as to drivers ahead, based simply on the fact that some of the forward drivers were able to successfully stop their vehicles before hitting each other." *Id.* at 68. At least implicitly finding *Kasper*'s facts closer to those in *Foley* than in *Wilkerson*, *Branstetter*, *King*, or *Butcher*, the Western District set aside the summary judgment and remanded for further proceedings. *Id.* at 69.

We have no quarrel with *Kasper*, its description of *Wilkerson*, or the differing results in *Foley* on one hand and *Branstetter*, *King*, and *Butcher* on the other, because what our supreme court said long ago still holds true: "Cases might be cited pro and con ad infinitum on this subject but, after all, each case depends upon its own particular facts and it is seldom that one decision really controls another." *Price v. Seidler*, 408 S.W.2d 815, 820 (Mo. 1966). We need not dwell on the "particular facts" of this case, however, because Bryan has collected the full measure of his damages.

 Subject to exceptions inapplicable here, Bryan cannot prevail on his UM claim against State Farm unless he is legally entitled to recover damages from the lead driver. *See Edwards v. Shelter Mut. Ins. Co.*, 280 S.W.3d 159, 162 (Mo.App. 2009). We observed in *Bryan I*, 175 S.W.3d at 720 n. 7, that if Bryan proved his allegations, the lead driver and Peppers "would be joint tort-feasors because

*Branstetter v. Gerdeman*, 364 Mo. 1230, 274 S.W.2d 240 (1955), *cited and analyzed in*

*Wilkerson*, 141 S.W.3d at 533–36.

their independent acts coalesced to cause a single, indivisible injury to Bryan." Bryan is limited to one satisfaction of judgment as to such tortfeasors. *Gaunt v. State Farm Mut. Auto. Ins. Co.*, 24 S.W.3d 130, 138 (Mo.App.2000).[2] Peppers' satisfaction of that judgment, which Bryan acknowledged before filing this appeal, precludes Bryan from recovering any such damages from the lead driver. *Id.*; *Slankard v. Thomas*, 912 S.W.2d 619, 624 (Mo.App. 1995); *Walihan v. St. Louis–Clayton Orthopedic Group, Inc.*, 849 S.W.2d 177, 180 (Mo.App.1993).[3]

## Conclusion

We will not reverse a judgment absent a showing of prejudice. *See* Rule 84.13(b). Having accepted a jury's determination of his damages without appeal, and having fully collected that sum, Bryan fails to show why further proceedings are either necessary or appropriate. Judgment affirmed.

RAHMEYER, P.J., and LYNCH, J., concur.

2. Bryan's argument that he sued State Farm in contract, not as a joint tortfeasor, misses the point. UM cases combine tort and contract liability. The uninsured motorist's liability for money damages is determined under tort rules, while that of the insurer is governed by contract. *Gaunt*, 24 S.W.3d at 136. State Farm may be contractually bound to pay damages that Bryan could legally recover from the lead driver, but Bryan extinguished that liability by collecting full damages from Peppers.

3. In his reply brief, Bryan asserts for the first time that he also pleaded a vexatious refusal claim. If we are to infer that such claim is not barred by Peppers' satisfaction or could exist in the absence of a principal claim, Bryan could and should have raised this in his first brief, since he knew the judgment was satisfied before he filed this appeal. Points and arguments omitted from an appellant's initial brief may not be supplied by a reply brief. *McCoy v. Scavuzzo*, 250 S.W.3d 1, 7 n. 3 (Mo.App.2008). Moreover, arguments in a brief's argument section, but not included in a point relied on, are not preserved for appeal. *Id.* The entire thrust of Bryan's sole point and initial brief, which he continued to urge at oral argument, was his alleged right to fully and separately try a UM claim against State Farm, including relitigation of the amount of damages that he sustained in the accident (in seeming opposition to his successful claim of prejudicial error in *Bryan I* ). At any rate, on this record, the vexatious refusal claim fails as a matter of law.