# United States Court of Appeals
## For the Eighth Circuit

_____

No. 11-1618
_____

John Lee Burroughs; Rose Burroughs

*Plaintiffs - Appellants*

v.

Mackie Moving Systems Corporation; Zurich American Insurance Company

*Defendant*s

AMCO Insurance Company

*Defendant - Appellee*

_____

No. 11-1710
_____

John Lee Burroughs; Rose Burroughs

*Plaintiffs - Appellees*

v.

Mackie Moving Systems Corporation; Zurich American Insurance Company

*Defendant*s

AMCO Insurance Company

*Defendant - Appellant*

_____

Submitted: March 14, 2012
Filed: August 30, 2012
_____

Before MELLOY, SMITH, and SHEPHERD, Circuit Judges.
_____

MELLOY, Circuit Judge.

In this uninsured motorist case out of the Eastern District of Missouri, plaintiff John Burroughs appeals the district court's ruling that the uninsured motorist (UIM) provisions in his insurance policies with defendant AMCO Insurance Co. (AMCO) may not be stacked beyond the statutory $25,000 minimum per insurance policy. Further, Burroughs argues that the district court erred in applying a settlement that arose from the same accident at issue in this case as a credit against what he may recover from AMCO. In its cross-appeal, AMCO argues that Burroughs's counsel's misconduct before the jury warrants a new trial. In addition, AMCO argues that Burroughs failed to make a submissible negligence case to the jury. We affirm the judgment of the district court as to all issues save its determination that UIM provisions may not be stacked beyond the statutory minimum. As to that issue, we reverse and remand.

I.

Burroughs was involved in an accident on Interstate 70 in Missouri in March of 2007. At the time of the accident, Burroughs was in the left-most lane of the interstate, driving a tanker with the cruise control set at sixty miles-per-hour. To his

right was a tractor-trailer operated by Mackie Moving Systems Corporation (Mackie). To the right of the Mackie truck was a red pickup truck. And entering the highway to the right of the red pickup truck was a white car. As these four cars drove more or less abreast, the white car suddenly swerved into the red pickup truck's lane. This caused a chain reaction: the red pickup truck swerved into the Mackie truck's lane, the Mackie truck swerved into Burroughs's lane, and Burroughs applied his brakes in a futile attempt to avoid hitting the Mackie truck, thus causing the accident that injured Burroughs. Lois Rohan, who was also entering I-70 behind the white car and witnessed the entire course of events, testified that the chain reaction occurred because the white car swerved into the red truck's lane. None of the cars—with the exception of Rohan and Burroughs—stopped. A highway patrol officer measured 100 feet of skid marks from Burroughs's tanker.

Burroughs sued Mackie under a negligence theory in November of 2007, thereafter adding AMCO, Burroughs's auto insurance provider, as a defendant. In addition, Burroughs sought $25,000 against Zurich American Insurance Company (Zurich) based on a UIM provision contained in an insurance policy Burroughs had purchased from Zurich. Early in the litigation, Burroughs brought a claim against AMCO for vexatious refusal to pay, but he dropped that claim when the district court indicated an inclination to dismiss it. The jury returned a verdict against Zurich and AMCO in the amount of $460,000 for Burroughs and $40,000 for his wife Rose's claim for loss of consortium. Prior to trial, Mackie had settled with Burroughs in the amount of $295,000.

Following the verdict, but prior to entering judgment, the district court heard argument on whether, in Missouri, UIM provisions could be stacked above the statutory minimum of $25,000 per policy. Burroughs had taken out three insurance policies with AMCO, each of which contained a UIM provision providing $50,000 in UIM coverage. The district court ruled that, notwithstanding the contracted-for $50,000 in coverage, the policies could only be stacked up to $25,000 per policy. In

-3-

addition, the district court ruled that Burroughs's settlement with Mackie applied as a credit against the jury verdict, based on a Missouri statute specifying that a plaintiff's settlement with a joint tortfeasor "shall reduce the claim by the stipulated amount of the agreement." Mo. Rev. Stat. § 537.060. Subsequently, Burroughs moved under Federal Rule of Civil Procedure 59 to alter or amend the judgment with respect to the stacking and settlement credit issues. The district court denied the motion in an amended memorandum opinion dated February 17, 2011.

Burroughs appeals, arguing that the district court erred in applying the Mackie settlement as a credit against the jury verdict. Specifically, Burroughs argues that § 537.060 only applies between joint tortfeasors. Because his suit against AMCO sounds in contract and not in tort, Burroughs argues that AMCO cannot be a joint tortfeasor and therefore cannot reap the benefit of § 537.060. In addition, Burroughs argues that the district court erroneously treated the $25,000 statutory floor on UIM coverage as a ceiling. Instead, Burroughs argues that parties in Missouri are free to contract for UIM coverage over and above the statutory minimum.

AMCO cross-appeals,[1] arguing that Burroughs's theory of negligence—the white car's "failure to keep a careful lookout"—was not supported by the evidence introduced at trial, because such a theory of negligence traditionally requires evidence that the joint tortfeasor had the ability to avoid the danger that caused the accident. Accordingly, AMCO argues that Burroughs failed to make a submissible case to the jury and thus the district court erred when it denied AMCO's renewed motion for judgment as a matter of law. Finally, AMCO argues that Burroughs's counsel made improper and prejudicial statements during closing argument, thus warranting a new trial.

---

[1]Zurich satisfied the $25,000 judgment against it and is not a party to this appeal.

II.

AMCO argues that the district court erred in denying its Rule 50 motion for a new trial based on the allegedly improper statements Burroughs's counsel made to the jury in the rebuttal portion of closing arguments. In rebuttal, Burroughs's attorney characterized AMCO as a serial denier of legitimate claims, saying that the company had no problem with contracting for coverage that it then refused to provide. AMCO objected to those statements, and the district court sustained that objection. Nevertheless, Burroughs's counsel continued to characterize AMCO's defense of the suit as "trying to get around their obligations that were bought and paid for." After another sustained objection, Burroughs's attorney concluded by asking the jury to "send [the plaintiffs] home finally with what they thought was paid for and bought, that protection." AMCO argues that it was prejudiced because the statements occurred in rebuttal, thus giving AMCO no opportunity to respond to them. Additionally, AMCO argues that the attorney's statements were especially improper because they violated the district court's direction that no mention was to be made of AMCO's alleged vexatious refusal to pay on the claims. According to AMCO, the attorney willfully violated the district court's mandate when insinuating that AMCO was a serial denier.

"The district court is in a better position to determine whether prejudice has resulted from a closing argument and the appellate court will not disturb the district court's ruling unless there has been an abuse of discretion." Vanskike v. Union Pac. R.R. Co., 725 F.2d 1146, 1149 (8th Cir. 1984) (internal quotation marks omitted). "To constitute reversible error, statements made in closing arguments must be plainly unwarranted and clearly injurious." Williams v. Fermenta Animal Health Co., 984 F.2d 261, 266 (8th Cir. 1993) (internal quotation marks and alteration omitted). "Reversal is inappropriate when the error is harmless and did not affect the substantial rights of the parties. A party seeking reversal in circumstances like the present ones must make a concrete showing that he or she was prejudiced by the objectionable

statement." Stemmons v. Mo. Dept. of Corr., 82 F.3d 817, 821–22 (8th Cir. 1996) (citation and internal quotation marks omitted).

In denying the Rule 50 motion, the district court concluded that, although the attorney's statements were improper, they were not sufficiently prejudicial to warrant a new trial. The district court observed that "[a]lthough the comments were clearly designed to poison the jury against big, evil insurance companies that are reluctant to pay their obligations, the court cannot say that they rise to the Morrissey level." The district court was referring to Morrissey v. Welsh Co., 821 F.2d 1294 (8th Cir. 1987), a wrongful death case that resulted in a $6.5 million jury verdict for the plaintiff. In that case, the plaintiff's attorney in closing arguments made repeated pleas for sympathy and essentially "accused [the defendant employer] of operating a sweatshop, and the jury was invited to award large sums of money to the plaintiffs in order to punish the company for this asserted misconduct." Id. at 1304.

The present case is easily distingiushable from Morrisey. The damages award in this case was much lower than the award in Morrissey, and the statements in this case were isolated and occurred in quick succession, as opposed to the repeated statements in Morrissey. In addition, this court has repeatedly minimized the degree of prejudice arising from statements that merely highlight what the jury already knows. See Johnson v. Bowers, 884 F.2d 1053, 1056 (8th Cir. 1989) ("[A]lthough the convictions did not bear on any issues on trial, counsel's statement did not clearly prejudice Johnson because the jury already knew he was a prisoner incarcerated for serious crimes."); Kehm v. Procter & Gamble Mfg. Co., 724 F.2d 613, 623 (8th Cir. 1983) ("It is highly probable that the members of the jury were already aware of the disparities in wealth between the parties . . . ."). Indeed, in Morrissey, this court relied in part on the fact that the district court failed to sustain objections to the improper statements. In contrast, the district court in this case sustained two objections to the improper statements, thus demonstrating to the jury that the statements were improper

and minimizing the degree to which the jury relied on them. The district court did not abuse its discretion in denying AMCO's motion for a new trial.

## III.

AMCO also appeals the district court's denial of AMCO's renewed motion for judgment as a matter of law as well as the reading of the negligence instruction to the jury. In essence, AMCO argues that there was insufficient evidence to support Burroughs's theory of negligence. We review the district court's denial of a renewed motion for judgment as a matter of law de novo, Minn. Supply Co. v. Raymond Corp., 472 F.3d 524, 536 (8th Cir. 2006), while we review the reading of jury instructions for abuse of discretion, Linden v. CNH Am., LLC, 673 F.3d 829, 836 (8th Cir. 2012).

The only theory of negligence that Burroughs asserted and that was submitted to the jury was the white car's failure to keep a careful lookout, which usually requires a showing not only that the driver could have seen the danger but also that the driver had the ability to take precautionary measures. Heberer v. Duncan, 449 S.W.2d 561, 563 (Mo. 1970) ("[A]lleged negligent failure to keep a careful lookout is not to be submitted to the jury unless there is substantial evidence from which the jury could find that, in the exercise of the highest degree of care, the allegedly negligent party, had he kept a careful lookout, could have seen the other vehicle or person in time thereafter to have taken effective precautionary action."). Ordinarily, making a submissible "failure to keep a careful lookout" negligence case generally requires evidence going to speed and distance. Wellman v. Wehmeyer, 965 S.W.2d 348, 351 (Mo. Ct. App. 1998) ("To make a submissible case for failure to keep a careful lookout, substantial evidence, not speculative deductions, must show that the driver had sufficient time and distance, considering the movements and speed of the vehicle, to take effective action to avoid a collision."). AMCO argues that Burroughs did not present such evidence. Instead, according to AMCO, Burroughs attempted to make his negligence case by conclusorily arguing that, because an accident occurred, the

white car was perforce negligent. Such speculative reasoning has been rejected in Missouri, according to AMCO.

AMCO's characterization of the proof required for a submissible "failure to keep a careful lookout" theory of negligence is too constricted. Missouri courts have recognized that, though specific showings are usually required to make a submissible "careful lookout" case, certain fact patterns make such proof unnecessary. In such cases, "the court carefully determined where the defendant could first have seen plaintiff and then held the defendant liable for acting as he did and *creating the danger*, rather than, as in the usual lookout submission, holding the defendant liable for failing to act after the danger should have been realized." Morgan v. Toomey, 719 S.W.2d 129, 135 (Mo. Ct. App. 1986) (emphasis added). These cases "represent an application of the duty to keep a careful lookout peculiar to their respective fact situations." Id. In McWilliams v. Wright, 460 S.W.2d 699 (Mo. 1970), the court reasoned:

> Effective precautionary action in such a case would have been merely to have stayed in his proper lane of travel, and to have refrained from turning left. Causation is obvious: But for the failure of defendant Wright to maintain a vigilant lookout no accident in fact would have occurred, assuming these facts to be true. Had he seen the other vehicle before he did, he would not have turned left when he saw it.

Id. at 702. Similarly, in Williams v. Christian, 520 S.W.2d 139 (Mo. Ct. App. 1974), the court relied on the above language from McWilliams and explained that these fact patterns "merely represent definitive fact situations where the absence of evidence as to precise time and distance does not preclude submissibility of failure to keep a careful lookout as being the proximate cause of the accident." Id. at 144.

Here, Rohan's witnesss testimony demonstrates that she was in a position to witness the entire chain reaction as she drove behind the four cars. She testified that

the white car swerved into an occupied lane. This testimony supports a finding that the white car affirmatively created the danger, thus making the white car's actions the proximate cause of Burroughs's injury. While speculation as to causation is impermissible, there are certain fact patterns—such as the fact pattern in this case—that obviate the need for types of evidence that is required in the mine-run case. Accordingly, the district court neither erred in denying AMCO's renewed motion for judgment as a matter of law nor abused its discretion in reading the negligence instruction to the jury.

IV.

Stacking of uninsured motorist provisions in insurance contracts is permitted in Missouri. Ragsdale v. Armstrong, 916 S.W.2d 783, 785 (Mo. 1996) (Benton, J., concurring). The question is whether the minimum uninsured motorist coverage required by law in Missouri—Mo. Rev. Stat. §§ 379.203 & 303.030 in conjunction require $25,000 in coverage—is also the maximum amount of uninsured motorist coverage permitted in Missiouri.

The district court framed the issue as "whether public policy requires stacking beyond the statutory minimum limits of $25,000." Answering that question in the affirmative, the district court concluded that stacking was limited to $25,000 per policy. We review the district court's resolution of this issue of law de novo. Henley v. Brown, 686 F.3d 634, 639 (8th Cir. 2012) ("[W]here the Rule 59(e) motion seeks review of a purely legal question, little turns on whether we label the review of this particular question abuse of discretion or de novo, for an abuse-of-discretion standard does not mean a mistake of law is beyond appellate correction." (internal quotation marks and alterations omitted)).

AMCO argues that Ragsdale establishes a $25,000 upper limit for UIM coverage. Further, AMCO points to Blake v. Farmers Ins. Co., No. 4:09-cv-01194,

2010 WL 3055189, at *1 (E.D. Mo. Aug. 4, 2010), which relied on <u>Ragsdale</u> to hold that $25,000 was the limit.

AMCO's argument is without merit. As an initial matter, the statute AMCO relies on specifies that auto insurance contracts in Missouri must provide UIM coverage that is "*not less*" than $25,000. Mo. Rev. Stat. § 379.203(1) (emphasis added). This indicates that the Missouri legislature contemplated, and approved of, the provision of UIM coverage over and above the statutory minimum. Thus, while § 379.203.1 sets a $25,000 floor, it nevertheless "allows citizens to purchase coverage above that minimum." <u>Rice v. Shelter Mut. Ins. Co.</u>, 301 S.W.3d 43, 46 (Mo. 2009).

Second, <u>Ragsdale</u> does not establish a $25,000 limit. In <u>Ragsdale</u>, the offending motorist was not uninsured but rather underinsured, as that motorist's insurance policy provided $10,000 of coverage. 916 S.W.2d at 784. The question in <u>Ragsdale</u> was whether the motorist was "uninsured" under the uninsured motorist provisions of the plaintiff's insurance policies. Those policies provided $100,000 and $50,000 of uninsured motorist coverage, respectively. <u>Id.</u> One member of the court would have affirmed the lower court's conclusion that the motorist was uninsured and that the plaintiff was entitled to the full $150,000 in coverage. <u>Id.</u> at 786–87 (Robertson, J., dissenting). That position did not garner a majority, however, and a divided court held the insurer liable up to the statutory minimum for both contracts. <u>Id.</u> at 783 (per curiam). Superficially, therefore, this opinion could suggest that the statutory floor is also a ceiling. But because this opinion turns on a close reading of the insurance policy's language, because it involved an underinsured motorist rather than an uninsured motorist, and because it garnered no majority, it does not establish a broad rule prohibiting UIM coverage above the statutory minimum.

That is exactly what the Missouri Court of Appeals concluded in a recent case:

> Appelant . . . argues that, according to <u>Ragsdale</u>, there is a cap on the stacking of the policies to the statutory minimum. <u>Ragsdale</u> does not stand for that proposition. There was no majority in the rationale for the ultimate award of damages but, more importantly, the court was interpreting the language of the policy before it.
>
> . . . While § 379.203 dictates the minimum requirements for uninsured motorist coverage in motor vehicle liability policies, the parties to an insurance contract are always free to implement policies which exceed the statutory requirements.

<u>Adams v. King</u>, 356 S.W.3d 326, 329–30 (Mo. Ct. App. 2011) (internal quotation marks omitted). In <u>Adams</u>, the court permitted stacking above the statutory minimum.

We see the same result in <u>Rice</u>. In that case, the UIM provisions of the three policies at issue totaled $600,000, but the policies also had provisions purporting to prevent payment above the $25,000 statutory minimum when benefits were provided to the insured via any compensation law. <u>Rice</u>, 301 S.W.3d at 45–46. The court found the policy language to be ambiguous and therefore construed the policy in the insured's favor insofar as it found the contractually-imposed limit on UIM coverage to be unenforceable. <u>Id.</u> at 49. Because that limit was unenforceable, the court saw no impediment to enforcing the full extent of UIM coverage and affirmed the lower court's summary judgment award of $600,000 in favor of the insured. <u>Id.</u>

AMCO argues that <u>Rice</u> turned on an ambiguity in the insurance contracts. That ambiguity, however, is beside the point, as it was resolved in the insured's favor. The court cast aside the exclusionary language and read the policies to provide $600,000 in UIM coverage. The lack of any such exclusionary language in the policies in this case is no basis on which to distinguish <u>Rice</u>.

Accordingly, we hold that UIM provisions may be stacked above the statutorily-prescribed minimum.

## V.

Finally, Burroughs appeals the district court's holding that AMCO is entitled to apply Burroughs's $295,000 settlement with Mackie as a credit toward the $460,000 jury verdict against AMCO.[2]

The district court applied the settlement as a credit against the jury verdict pursuant to § 537.060, which states:

> Defendants in a judgment founded on an action for the redress of a private wrong shall be subject to contribution, and all other consequences of such judgment, in the same manner and to the same extent as defendants in a judgment in an action founded on contract. When an agreement by release, covenant not to sue or not to enforce a judgment is given in good faith to one of two or more persons liable in tort for the same injury or wrongful death, such agreement shall not discharge any of the other tort-feasors for the damage unless the terms of the agreement so provide; however such agreement shall reduce the claim by the stipulated amount of the agreement, or in the amount of consideration paid, whichever is greater. The agreement shall discharge the tort-feasor to whom it is given from all liability for contribution or noncontractual indemnity to any other tort-feasor. The term

[2]The parties agree that this issue is largely academic. At oral argument, Burroughs's counsel conceded that, because of the interplay between the Mackie settlement, the judgment that Zurich satisfied, and the jury verdicts in favor of Rose and John Lee Burroughs, this court's resolution of the settlement credit issue may have no impact on AMCO's total liability. Instead, resolution of the settlement credit issue might only impact the allocation of AMCO's total liability as between Mr. and Mrs. Burroughs. On remand, the parties can raise these issues before the district court.

"noncontractual indemnity" as used in this section refers to indemnity between joint tort-feasors culpably negligent, having no legal relationship to each other and does not include indemnity which comes about by reason of contract, or by reason of vicarious liability.

The district court reasoned that because the white car's tort liability is reduced by the settlement per the above statute, and because AMCO's contractual liability is tied to the white car's tort liability, AMCO's contractual liability is similarly reduced by the settlement amount. As with the stacking issue, we review the district court's resolution of this issue of law de novo. Henley, 686 F.3d at 639.

Burroughs argues that, as the statute only applies between joint tortfeasors, and as AMCO is not a joint tortfeasor, the statute has no application in this case. In support of this reading, Burroughs cites Missouri cases that he says demonstrate that the statute is inapplicable when an injured party brings claims against an uninsured motorist carrier and a tortfeasor.

AMCO responds that this very argument was rejected by the Missouri Court of Appeals in Bryan v. Peppers, 323 S.W.3d 70, 74 n.2 (Mo. Ct. App. 2010), a case that the district court relied on in rejecting Burroughs's argument. In that case, the court brushed aside the distinction Burroughs would like to draw between contract and tort liability:

Bryan's argument that he sued State Farm in contract, not as joint tortfeasor, misses the point. UM cases combine tort and contract liability. The uninsured motorist's liability for money damages is determined under tort rules, while that of the insurer is governed by contract. State Farm may be contractually bound to pay damages that Bryan could legally recover from the lead driver, but Bryan extinguished that liability by collecting full damages from Peppers.

-13-

Id. (internal citation omitted). The Bryan court, and the district court in this case, found that the settlement by a joint tortfeasor reduced the potential recovery against the other joint tortfeasor, thus reducing (and in Bryan, eliminating) the contractual liability of the plaintiff's insurance company.

The Supreme Court of Missouri's decision in Richie v. Allied Property & Casualty Insurance Co., 307 S.W.3d 132 (Mo. 2009), is also instructive on this issue. In that case, the court rejected an insurance company's argument that the funds the plaintiff received from the tortfeasor's insurers should be applied as a set-off against any UIM liability. Id. at 141. In reaching that conclusion the court relied on the fact that the jury-determined damages would not be satisfied even when the full UIM coverage and the amount already received were added together. Id. ("[T]he [plaintiffs] suffered $1.8 million in damages, and received only $60,000 from the tortfeasors. Deducting this $60,000 from the $1.8 million in damages still leaves unsatisfied damages of $1.74 million. This is far more than the policy limits. Accordingly, [the UIM carrier] must pay its full policy limits of $300,000."). The implication from this reasoning is that the UIM coverage and the settlement amount cannot together exceed the jury-determined damages.

We agree with AMCO that the district court did not err in applying the Mackie settlement as a credit against the jury verdict against AMCO. Burroughs cites cases wherein an insurance company's payments pursuant to UIM clauses were not applied as credits toward judgments obtained by the insured against a joint tortfeasor. Hagedorn v. Adams, 854 S.W.2d 470, 479 (Mo. Ct. App. 1993) (collateral source rule prevents crediting insurance company's settlement payment against judgment obtained against tortfeasor); Elfrink v. Burlington N. R.R. Co., 845 S.W.2d 607, 615 (Mo. Ct. App. 1992) (Mo. Rev. Stat. § 537.060 "does not and cannot reduce [the tortfeasor's] liability by the collateral payments received by [the plaintiffs] under a policy of insurance . . . . The right of the injured party to recover from an uninsured motorist carrier arises from the insurance contract, rather than in tort."). But these case are

-14-

inapposite, as they do nothing to change the core fact that the insurance company's liability in this case turns on the interaction of the statute (which applies credits between joint tortfeasors) and the insurance policy provisions (which tie contractual liability to tort liability). No such relationship is present in those cases, so they do not guide the resolution of this issue.

Accordingly, we reverse the judgment of the district court with respect to the stacking issue and remand to the district court for further proceedings consistent with this opinion.

_____