# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1474
_____

Karen Carroll; Honor Carroll; Trace Carroll, As the Surviving Heirs and
Administratrix of the Estate of Shawn E. Carroll, Deceased

*Plaintiffs - Appellants*

The Estate of Shawn E. Carroll

*Plaintiff*

Lauren Wilken

*Plaintiff - Appellant*

v.

Brunswick Corporation; Sea Ray Boats; Brunswick Boat Group

*Defendants - Appellees*
_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City
_____

Submitted: April 15, 2025
Filed: August 4, 2025
_____

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.
_____

GRUENDER, Circuit Judge.

In May 2020, a fire started in the engine of a recreational power boat (the "*Pajivo*") on the Lake of the Ozarks, causing an explosion that injured passenger Lauren Wilken and killed passenger Shawn Carroll. This appeal concerns the consequent suit brought by the Carroll family and Wilken against the boat designer, manufacturer, and seller (collectively "Brunswick") for defective design, failure to warn, negligence, and wrongful death. After trial, the jury returned a verdict in Brunswick's favor. On appeal, the plaintiffs assert four district court[1] errors. For the reasons set forth below, we affirm.

## I. Background

On May 2, 2020, Brent Solomon—the *Pajivo*'s primary caretaker—Carroll, Wilken, and one other individual ended their day of boating on the Lake of the Ozarks with a stop at the Bridgeview Marina to refuel. Once they had finished refueling, Solomon briefly turned on fans that blow fuel vapor out of the engine compartment but failed to raise the engine hatch to ensure gasoline fumes were not present. Solomon then started the engine, triggering an explosion.

The Carroll family and Wilken sued Brunswick, alleging defective design, failure to warn, negligence, and wrongful death. While the parties agreed that the explosion occurred due to gasoline fumes in the boat's right engine, they disputed how the gasoline fumes got there. The plaintiffs faulted the fuel system design, pointing out that the fuel fill hose, which fed fuel into the engine tanks, was bent. They alleged that the bend caused the hose to weaken and crack over time, which in turn allowed gasoline to leak from the hose into the engine compartment. For its part, Brunswick asserted that the explosion resulted from a combination of failure to perform critical maintenance and user errors on the day of the explosion.

---

[1] The Honorable Brian C. Wimes, United States District Judge for the Western District of Missouri.

The plaintiffs retained J. Michael Hunter, a marine surveyor, to testify about possible sources of fuel leaks and ignition that caused or contributed to the explosion. Hunter had inspected three other Brunswick boats, which contained cracks in the fuel fill hose. One of those boats—the *Schroeder*—had exploded in 2008, leading to litigation against Brunswick. In this case, the *Pajivo*'s fuel fill hose was never recovered, but Hunter posited that cracks in the hose allowed gasoline to leak into the engine compartment.

Prior to trial, Brunswick filed a motion *in limine* to exclude "[e]vidence, [i]nference or [a]rguments regarding other [b]oat [e]xplosions," claiming that evidence of other boat explosions was "irrelevant, dissimilar, and would result in confusion to the jury." Specifically, Brunswick sought to exclude Hunter's testimony pertaining to the *Schroeder* explosion and Brunswick and Hunter's joint inspection of the *Schroeder*'s cracked fuel fill hose during the subsequent litigation. The plaintiffs countered that the *Schroeder* explosion constituted admissible other-similar-incident ("OSI") evidence because the *Pajivo* and *Schroeder* were the same model and the factual scenarios were substantially similar. The district court granted Brunswick's motion and instructed the plaintiffs that Hunter could "testify as an expert related to the incident on *this* boat" but not about the *Schroeder* explosion or Brunswick's knowledge of the *Schroeder*'s cracked fuel fill hose. The plaintiffs' counsel assured the district court that Hunter would not mention the *Schroeder* explosion or subsequent litigation and would testify only that he discovered a leak in the *Schroeder*'s fuel fill hose.

The case proceeded to a jury trial. During *voir dire*, Brunswick attempted to strike the only two black venirepersons—Juror No. 13 and Juror No. 21. Brunswick moved to strike Juror No. 21 for cause, alleging that he was sleeping during *voir dire*. The district court denied that attempted strike, explaining that it had not observed Juror No. 21 sleeping. Brunswick later used a peremptory strike to remove Juror No. 13, explaining that her occupation as a registered nurse specializing in oncology might unduly influence other jurors regarding doctors' testimony about predeath pain and suffering. The plaintiffs raised a *Batson* challenge, *see Batson v.*

*Kentucky*, 476 U.S. 79 (1986), arguing that Brunswick's proffered reasons for striking the black prospective juror were pretextual, but the district court denied that challenge.

The parties called various witnesses over the course of an eight-day trial. As relevant here, the plaintiffs called Hunter as an expert witness to testify about the *Pajivo* explosion. Despite the district court's order barring testimony about the *Schroeder* explosion, Hunter testified that the *Schroeder* had exploded and that Brunswick's counsel had inspected the *Schroeder*. Brunswick immediately moved for a mistrial, requesting in the alternative that the district court strike Hunter's testimony regarding the *Schroeder*. The district court did not grant Brunswick's mistrial motion, but it instructed the jury that Hunter's testimony and evidence related to the *Schroeder* "is excluded . . . and is not to be considered by you in your deliberations."

However, that was not the district court's last intervention related to the excluded evidence. During closing arguments, Brunswick's counsel asserted that plaintiffs "haven't met their burden of proof for liability," asking, "[where are] all the other explosions." The plaintiffs objected and requested the district court "instruct the jury that we were not allowed to present evidence of other explosions," or that they be permitted to argue "[t]hat there have been other explosions of [Brunswick] boats." The district court denied both requests, but instructed the jury to "disregard the last comments made by the defense attorney." Ultimately, the jury returned a verdict in Brunswick's favor on all claims.

## II. Discussion

On appeal, the plaintiffs claim that the district court erred in denying their *Batson* challenge. They also raise several challenges to the district court's exclusion of evidence and statements pertaining to other similar incidents.

-4-

## A. *Batson* challenge

We begin with the plaintiffs' claim that the district court erroneously denied their *Batson* challenge. We review the district court's *Batson* determination for clear error, *see United States v. Johnson*, 954 F.3d 1106, 1111 (8th Cir. 2020), reversing if we are "left with the definite and firm conviction that the district court's finding is mistaken," *United States v. Swinney*, 970 F.2d 494, 497 (8th Cir. 1992). To prevail on a *Batson* challenge, the party opposing the strike must establish a *prima facie* case of discrimination and show that the proponent's proffered reasons for the strike were a pretext for race discrimination. *United States v. Maxwell*, 473 F.3d 868, 871 (8th Cir. 2007).

The plaintiffs contend that they have established pretext because Brunswick's proffered reason for striking Juror No. 13 was unreasonable. We must assess "how reasonable, or how improbable, [Brunswick's] explanations" were and "whether the proffered rationale [had] some basis in accepted trial strategy." *Miller-El v. Cockrell*, 537 U.S. 322, 339 (2003). A venireperson's occupation provides a reasonable ground for a peremptory strike that has a basis in accepted trial strategy. *See Maxwell,* 473 F.3d at 872 (upholding strike where juror's employment made juror more sympathetic to the opponent); *United States v. Velazquez-Rivera*, 366 F.3d 661, 666 (8th Cir. 2004) (upholding strike where the juror was struck, in part, because she was a nurse). Here, Brunswick's counsel reasonably explained that he struck Juror No. 13 due to her medical background as an oncology nurse, which he thoroughly explored during *voir dire* through questions about her medical experience and whether her medical training might lead her to favor one side's medical testimony. Because this case involved a claim "that the decedent suffered from predeath pain and suffering," Brunswick's counsel concluded that Juror No. 13's occupation as a registered nurse specializing in oncology might unduly influence other jurors regarding the doctors' testimony about predeath pain and suffering. Additionally, she might be unduly sympathetic to the plaintiffs' side of the case, due to her exposure to pain and suffering as an oncology nurse. Thus,

Brunswick's explanation was "reasonable" and "[based] in accepted trial strategy." *See Miller-El*, 537 U.S. at 339.

In addition, the plaintiffs contend that the strike was pretextual because Brunswick did not attempt to strike a similarly situated white panelist—Juror No. 8. *See Flowers v. Mississippi*, 588 U.S. 284, 287-88 (2019); *Devoil-El v. Groose*, 160 F.3d 1184, 1187 (8th Cir. 1998). But here, venirepersons 8 and 13 had a significant and relevant difference: during *voir dire* Juror No. 8 stated he had worked for General Motors and recognized the importance of owners performing maintenance on cars manufactured by General Motors. Brunswick's defense rested on the theory that "no critical basic maintenance was done on this boat [in two decades]" and "no fuel system inspection was ever performed." Thus, Juror No. 8's employment with General Motors and statement during *voir dire* that owners should perform "critical maintenance" indicated that he might attribute the explosion to a lack of maintenance rather than a design flaw. Though both Juror No. 8 and No. 13 worked in medical fields, Juror No. 13 lacked the employment history and views on maintenance that made Juror No. 8 a favorable juror for Brunswick. *See Groose*, 160 F.3d at 1187 (upholding a finding that the proffered reasons were nondiscriminatory where "Caucasian jurors sharing the same characteristics were not removed," "because the combination of characteristics was different in the non-stricken venirepersons"). Juror No. 8 possessed relevant characteristics that distinguished him from Juror No. 13. *See id.* Accordingly, the district court did not clearly err in rejecting the plaintiffs' *Batson* challenge.

## B. Similar Incidents

We now turn to Carroll's remaining challenges, which all pertain to the district court's exclusion of evidence or statements pertaining to other similar incidents ("OSI"). First, the plaintiffs claim that the district court erred by excluding their evidence of the *Schroeder* explosion and litigation. "The decision whether to admit similar-incident evidence is committed to the sound discretion of the district court and we will not overturn the decision to admit OSI evidence absent a clear and

prejudicial abuse of discretion." *Adams v. Toyota Motor Corp.*, 867 F.3d 903, 911 (8th Cir. 2017) (internal citations and quotation marks omitted). "There are no hard or fast rules as to what degree of similarity there must be to make the evidence admissible." *Henwood v. Chaney*, 156 F.2d 392, 397 (8th Cir. 1946). Indeed, "[t]he substantial similarity analysis is 'case specific' and fact-intensive." *Scott v. Dyno Nobel, Inc.*, 108 F.4th 615, 632 (8th Cir. 2024). In general, the other similar incidents must be "sufficiently similar in time, place or circumstances to be probative." *Thomas v. Chrysler Corp.*, 717 F.2d 1223, 1225 (8th. Cir. 1983). Additionally, courts may bar evidence of other incidents when the conditions of the products are dissimilar. *See, e.g.*, *id.* (affirming exclusion of other accidents where the appellant failed to demonstrate that the vans were in similar condition).

The plaintiffs claim that the district court's exclusion of the *Schroeder* explosion and related litigation was erroneous because the boats, explosions, and causes in the *Schroeder* case and this one were substantially similar. The boats were the same model (albeit slightly different model years), had the same type of fuel fill hose, routed the fuel fill hoses the same way, were on the Lake of the Ozarks, and experienced an explosion at or around the time of refueling. But the plaintiffs failed to show that the *Pajivo* and the *Schroeder* were in similar condition when the explosions occurred.[2] The plaintiffs offered no proof concerning the mileage, maintenance, or the condition of the *Schroeder* when it exploded. Although the plaintiffs are correct that our precedent does not always require parties produce proof of "maintenance history," that precedent confirms that the boat's condition at the time of explosion is relevant. *See, e.g.*, *Adams*, 867 F.3d at 913 (requiring proof of similar conditions at the time of the incident—namely, similar vehicle mileage).

---

[2]The plaintiffs contend that Brunswick did not raise this argument in its motion *in limine*. We disagree. In their motion *in limine*, Brunswick argued that introducing evidence of boats with "unknown mechanical histories," and "unknown causes and origins of the fires/explosions" would prejudice the jury against it.

Accordingly, the district court did not abuse its discretion[3] in excluding evidence of the *Schroeder* explosion and litigation.

Second, the plaintiffs contend that the district court erred by striking Hunter's testimony during trial regarding the *Schroeder* as a sanction for Hunter's violation of its order. A district court's imposition of a sanction for a violation of its order is reviewed for abuse of discretion, *Chambers v. Nasco, Inc.*, 501 U.S. 32, 55 (1991) and is given "substantial deference," *Willhite v. Collins*, 459 F.3d 866, 869 (8th Cir. 2006). To impose a sanction, the court need not find bad faith by the violating party. *See Stevenson v. Union Pac. R.R. Co.*, 354 F.3d 739, 745 (8th Cir. 2004).

We recently affirmed a sanction imposed by a district court where counsel elicited testimony at odds with the district court's orders on motions *in limine*, amongst other conduct. *RightCHOICE Managed Care, Inc. v. Hosp. Partners, Inc.*, 109 F.4th 1054, 1060 (8th Cir. 2024). Here too, the district court acted well within its discretion in finding a violation of its order and fashioning an appropriate sanction. Hunter's testimony violated the district court's order by stating that the *Schroeder* exploded and that Brunswick's counsel had inspected the *Schroeder*. The district court recognized that those comments violated its order but chose to sanction with restraint. Instead of granting a mistrial, it struck Hunter's testimony about the *Schroeder* while still admitting his testimony and evidence regarding the other two comparison vessels. Altogether, we detect no abuse of discretion in the district court's sanction.

Finally, the plaintiffs claim that the district court erred by precluding them from introducing evidence of the *Schroeder* explosion as a remedy for the comment during closing argument by Brunswick's counsel. To constitute reversible error, statements made by counsel in closing argument must be "plainly unwarranted and

---

[3]Brunswick argues that the plaintiffs did not preserve this OSI issue for appeal, and that therefore we should review for plain error. We need not address this argument, because the plaintiff's claim fails under an abuse of discretion standard.

clearly injurious." *Hofer v. Mack Trucks, Inc.,* 981 F.2d 377, 385 (8th Cir. 1992); *see City of Malden v. Union Elec. Co.,* 887 F.2d 157, 164 (8th Cir. 1989). We will not disturb a district court's ruling on comments made during closing arguments unless the district court abused its discretion. *Vanskike v. Union Pac. R.R. Co.,* 725 F.2d 1146, 1149 (8th Cir. 1984). We review for an abuse of discretion because "[t]he district court is in a better position to determine whether prejudice has resulted from a closing argument." *Burroughs v. Mackie Moving Sys. Corp.,* 690 F.3d 1047, 1051 (8th Cir. 2012).

Here, even though Brunswick's counsel's comment—"w[h]ere [are] all the other explosions"—may have prejudiced the plaintiffs if uncured, the district court did take curative action. *See Gilster v. Primebank,* 747 F.3d 1007, 1011-12 (8th Cir. 2014). Following the comment, the plaintiffs asked the district court to "instruct the jury to disregard his last comments." The district court did just that, curing "any prejudice that might have been caused by the comment." *See Harrison v. Purdy Bros. Trucking Co., Inc.,* 312 F.3d 346, 353 (8th Cir. 2002) (finding similar instruction cured any prejudice from counsel's reference to pre-trial settlement discussions in closing argument); *Lockley v. Deere & Co.,* 933 F.2d 1378, 1388-89 (8th Cir. 1991) (holding court's similar admonition to jury cured any prejudice from counsel's reference to a gross sale figure where court had informed counsel that such a figure could not be used to show defendant's current net worth). Therefore, detecting no abuse of discretion, the plaintiffs' final argument also fails.

## III. Conclusion

For the foregoing reasons, we affirm the district court's judgment.

_____